**John Stephen RALLS, Appellant (Plaintiff Below),**

v.

**NOBLE ROMAN'S INC., Appellee (Defendant Below).**

No. 4–985A264.

Court of Appeals of Indiana, Fourth District.

April 16, 1986.

Rehearing Denied June 3, 1986.

Richard D. Schreiber, Gray, Robinson, Eckert, Ryan & Schreiber, Indianapolis, for appellant.

Pamela J. Hamilton, John T. Hume, III, Hume, Smith, Geddes & Green, Indianapolis, for appellee.

CONOVER, Judge.

Plaintiff-Appellant John Ralls (Ralls) appeals the trial court's grant of summary judgment favoring Defendant-Appellee Noble Roman's Inc. (Noble Roman's) in a premises liability action following a robbery at the restaurant.

We affirm.

ISSUES

Ralls raises three issues for our review. We restate and consolidate these issues into one.

1. Whether Noble Roman's breached a duty owed to Ralls, its customer by

(a) not informing him the restaurant had previously been robbed by the three men who visited the restaurant on the night in question, and

(b) not informing him of an undercover police operation being conducted outside the restaurant to catch the robbers.

FACTS

On the evening of February 19, 1982, three men entered Noble Roman's restaurant and asked what the latest time was they could order a pizza "to go." The employee to whom they talked recognized the men as robbers who previously had held up the restaurant. She so informed her manager. He telephoned the Indianapolis Police Department (IPD). When the men left Noble Roman's, two employees followed them to their car. They later described it to IPD. IPD officer Dennis Riley and his partner went to Noble Roman's and spoke with the manager. They told him IPD had several officers assigned to robbery stake-out detail and could flood the area in case the men returned. The officers then informed the manager they would return with information for him once they contacted their superiors and the stake-out team.

At 10:30 or 11:00 p.m. Ralls met two of his co-workers at Noble Roman's for pizza. While there, the niece of one co-worker (Kelly Jay) came over to Ralls's table. Jay was a Noble Roman's employee. Jay told Ralls and his co-workers the men who had robbed Noble Roman's previously had come into the restaurant that evening. She said Noble Roman's manager had been informed and had called the police. Ralls thought Jay was just telling him and his friends these things to impress them. Ralls and his friends remained at Noble Roman's talking.

Meanwhile officer Riley and his partner met with IPD's coordinator for special operations, Lieutenant Purvitis, to set up a plan to apprehend the hold-up men. They discussed the fact there had been a rash of "pizza-place" robberies on the southside by three black males and talked to the Noble Roman's employees involved.

After considering various factors, including the safety of the customers, the police officers came up with what they considered the safest possible manner of apprehending the men if they returned.

Instead of attempting to confront the men inside Noble Roman's where employees or customers might be injured, IPD planned to keep all officers outside the restaurant. They would allow the suspects to enter and rob Noble Roman's, then apprehend them once they got to their car. The car would be disabled by the police.

IPD instructed Noble Roman's employees to hand over the money and not interfere with the robbers, so as not to endanger anyone in the restaurant. IPD did not advise Noble Roman's customers of the plan or the possibility of robbery. Lieutenant Purvitis had learned from experience not to warn customers in this type of case and thought this was the best policy to follow.

Inside Noble Roman's, Ralls and his friends had finished their pizza, paid their bill, and were sitting around talking. The robbers returned. Ralls quickly exited the building. He went to his car which was parked around the side of Noble Roman's. He was unable to find his car key. Ralls walked towards the restaurant to look for his keys. The three hold-up men then exited the building followed by two men who turned out to be off-duty Marion County Sheriffs Police Deputies. No one had any idea there were off-duty deputies inside.

Several shots were exchanged between the deputies and the hold-up men. Two of the suspects were apprehended. IPD officer Riley broadcasted a description of the third suspect's attire and stated he was armed and had gone south around the building. Ralls, still near his car, heard shots being fired. To avoid getting hurt, he left Noble Roman's lighted parking lot and looked for a place to hide until the shooting stopped. Ralls saw a yard behind some houses adjacent to Noble Roman's and ran into the darkness.

Ralls chose a path to follow which led directly to the robbers get-away car. The path was dark. Ralls was dressed similarly to the unapprehended third hold-up man. Lieutenant Purvitis was near the get-away car he had just disabled. He heard someone yell more than once, "hold it, hold it, police." He then heard a gun shot blast and could see two figures still running towards him. The first figure dropped in the snow, and Purvitis recognized the second as officer Gary Hall.

Officer Hall had mistaken Ralls for the suspect and had shot him. Ralls had not heard any one say anything to him prior to being shot. Ralls had mistaken officer Hall for one of the hold-up men and had run from him even after being shot. At the time of the shooting, neither Ralls nor Hall was on Noble Roman's premises.

Ralls filed this action against Noble Roman's, basing his claim on premises liability. The trial court granted Noble Roman's motion for summary judgment. Ralls appeals, claiming there are disputes of material fact, and Noble Roman's is negligent as a matter of law.

## DISCUSSION AND DECISION

### I. *Summary Judgment*

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *M.R. by Ratliff v. Meltzer* (1986), Ind.App., 487 N.E.2d 836, 839. The purpose of summary judgment is to expedite litigation which presents no genuine factual dispute. *Indiana University Hospital v. Carter* (1983), Ind.App., 456 N.E.2d 1051, 1053. Just because a matter is placed in issue by the pleadings does not make it a factual issue sufficient to preclude summary judgment. *Duran v. Komyatte* (1986), 490 N.E.2d 388, 391.

In *Borton v. Lavendusky* (1985), Ind. App., 486 N.E.2d 639, we stated:

When reviewing the grant of a motion for summary judgment we stand in the shoes of the trial court. *Lafary v. La-*

*fary* (1985), Ind.App., 476 N.E.2d 155, 158. We must liberally construe all evidence in favor of the nonmovant and resolve any doubts as to the existence of a genuine issue against the proponent of the motion. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729. Summary judgment may not be used as a substitute for trial to resolve factual disputes. Even if the trial court believes the nonmoving party will not be successful at trial, where material facts conflict or conflicting inferences are possible from undisputed facts, summary judgment should not be entered. *Grimm v. Borkholder* (1983), Ind.App., 454 N.E.2d 84, 86.

486 N.E.2d at 641.

## II. *Negligence Based Upon Premises Liability*

In Indiana, the tort of negligence is comprised of three elements: (1) a duty on the part of defendant in relation to the plaintiff, (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff resulting from such failure. *Ingram v. Hooks Drugs, Inc.* (1985), Ind.App., 476 N.E.2d 881, 883. Whether a duty exists is a question of law. *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, 1217.

Ralls was shot by an IPD officer. He was running away from Noble Roman's premises, through a wooded area, in a direct path to the robber's get-away car. He claims Noble Roman's is negligent in failing to warn him about the undercover police operation. He further claims the restaurant was negligent in failing to inform him about the prior robbery and the appearance of the robbers at the restaurant on the night he was a customer. We disagree.

### (A.) *Duty*

It is well established the duty of reasonable care owed by a host to a business invitee includes the obligation to make the premises reasonably safe. Included is the obligation to exercise reasonable care to discover possibly dangerous conditions and take reasonable precautions to protect the invitee. *Hobby Shops, Inc. v. Drudy* (1974), 161 Ind.App. 699, 317 N.E.2d 473, 478. Given this standard, we find Noble Roman's did owe Ralls, its customer, a duty under the first step of the *Ingram* test. Nonetheless, Ralls's claim lacks merit when analyzing it against the second and third steps of the test.

### (B.) *Defendant Conforming Conduct to the Requisite Standard of Care*

Although we find no Indiana case law dealing with the specific issue presented here, we find Restatement (Second) of Torts, Section 344 instructive. Section 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

In *Slater v. Alpha Beta Acme Markets, Inc.* (1975), 44 Cal.App.3d 274, 118 Cal. Rptr. 561, the California Court of Appeal applied Restatement (Second) of Torts, § 344 to a similar fact situation. In *Slater*, Alpha Beta operated a supermarket in North Hollywood. Alpha Beta had been robbed twice within the past few months by the same individual. After each robbery, Alpha Beta notified the police. On January 19, 1970, Slater was a customer at the store. Inside, two undercover police officers conducted surveillance of the market's checkout stands. Neither Alpha Beta nor the police had actual knowledge a robbery would occur on this particular date.

While Slater was waiting in line, the robber struck again. As the robber fired a shot in the store, Slater was pushed to the floor by another customer and injured.

No warning was given to Slater by Alpha Beta or the police regarding the two prior robberies or of the surveillance being conducted. Slater contended when Alpha Beta discovered the robber's harmful acts might injure customers, its notification to the police did not, in absence of warning customers, or other actions, constitute reasonable care to protect the customers from such acts.

The court disagreed, holding:

In the present case, the court concluded:

"1. Defendant Alpha Beta owed plaintiff a duty of reasonable care to protect her from the accidental, negligent, or intentionally harmful acts of third persons, and is subject to liability to plaintiff for physical harm caused to her thereby by the failure of defendant Alpha Beta to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable plaintiff to avoid the harm, or otherwise to protect her against it.

"2. Defendant Alpha Beta exercised reasonable care to (a) discover that intentionally harmful acts of third persons were being done or were likely to be done on the premises, and (b) to protect plaintiff against such acts. Accordingly, defendant Alpha Beta was not negligent."

In reaching its conclusion, the trial court properly relied upon the principles set forth in Restatement Second of Torts, section 344. (See Barker v. Wah Low, 19 Cal.App.3d 710, 714, 97 Cal.Rptr. 85.) Under the circumstances, the trial court could reasonably find that defendant adequately discharged its duty to its customers; it notified the police department of the prior robberies; police personnel were posted throughout the store and Alpha Beta's security was fully advised of the existing situation.

118 Cal.Rptr. at 563–564.

■ Ralls claims Noble Roman's breached its duty by not informing him the IPD was conducting an undercover operation outside the restaurant. Thus, he opines, Noble Roman's is liable for injuries he sustained as a result of getting shot by the police following the foiled robbery attempt. Ralls cites no cogent or applicable authority to support this proposition. This argument is therefore waived. *Turnpaugh v. Wolf* (1985), Ind.App., 482 N.E.2d 506, 610; Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). We note in passing, however, informing the public about an undercover police operation would defeat the purpose of that operation.

Ralls further claims Noble Roman's breached its duty by not informing Ralls it had been robbed previously by the men who came into the restaurant. We find this claim contrary to Ralls's own deposition testimony. Ralls testified his co-worker's niece, a Noble Roman's employee, informed him the men who had robbed the restaurant previously had returned. (R, 172–176). Upon receiving this information, Ralls could have left the restaurant. He chose not to do so. Instead, after receiving a warning, he voluntarily stayed and ate pizza. When one has sufficient information reasonably to lead him to a fact, he must be deemed conversant with it. *Rogers v. City of Evansville* (1982), Ind.App., 437 N.E.2d 1019, 1027.

(C) *No Injury to Plaintiff Resulting from Duty or Conduct of Defendant*

After Noble Roman's contacted the police, the restaurant had no control over how the police carried out the undercover operation. The shooting occurred in a wooded area, off the premises of Noble Roman's, where customers were not known to go and over which Noble Roman's had no control.

In *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092, our Supreme Court cited the Restatement (Second) of Torts § 315 for its statement of the general rule regarding liability for the actions of a third person.

There is no duty so to control the conduct of a third person as to prevent him from causing harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

463 N.E.2d at 1094.

A defendant is not liable for the acts of a public official, over whom he has no control, if such act is the proximate cause of the injury sustained. *See, Puleo v. Bailey* (1919), 186 A.D. 771, 174 N.Y.S. 781, 782–783. In *Flanigan, supra,* 489 N.E.2d 1216 Judge Ratliff stated:

Here, as in *Blake* [*v. Dunn Farms* (1980) 274 Ind. 560, 413 N.E.2d 560], the owners of the property, the Princes, had no relationship to the agency (the vehicle which struck the Flanigans) causing the injury. To impose liability upon Princes, under the circumstances of this case, for the acts of a third party over whom they had no control, and which occurred not on their property but on a public highway over which they had no control would clearly be contrary to the principles announced in *Blake*. Further, such a rule is contrary to decisions from other jurisdictions which have addressed the precise issue involved here.

489 N.E.2d at 1218.

As to Noble Roman's, the shooting of Ralls, whom the police mistook to be a robber running for the get-away car, was an entirely unforseeable event. *See, Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, 388.

We find Noble Roman's breached no duty owed to Ralls as a matter of law. Because the material facts are not in dispute, summary judgment is appropriate.

Affirmed.

YOUNG, P.J., and MILLER, J. concur.