# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 26, 2005          Decided July 7, 2006

No. 04-7149

DOMINIC NOVAK,
APPELLANT

v.

CAPITAL MANAGEMENT AND DEVELOPMENT CORPORATION,
ET AL.,
APPELLEES

———

Consolidated with
04-7150

———

Appeals from the United States District Court
for the District of Columbia
(No. 01cv00039)
(No. 01cv00456)

———

*Patrick M. Regan* argued the cause for appellants. With him
on the briefs were *Jonathan E. Halperin* and *Thanos Basdekis*.

*William C. Parler, Jr.* argued the cause and filed the briefs
for appellee.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* KAREN LECRAFT HENDERSON.

GRIFFITH, *Circuit Judge*: Twelve to fifteen thugs criminally attacked and permanently injured appellants Dominic Novak and George Valdivia as they were leaving a bar and dance club in the District of Columbia. The attack occurred late at night in an alley that was immediately outside the only exit from the club and was the most common path for departing patrons. The club's operators allegedly knew that there had been numerous attacks on their customers in and around the club at that time of night and yet failed to take steps to protect Novak and Valdivia. This case presents the question whether the club's operators had a duty to use reasonable care to protect Novak and Valdivia from the danger of an attack. The District Court concluded there was no such duty because the club did not exercise "exclusive control" over the alley and granted summary judgment for the club's operators. The District Court also held that evidence of two similar assaults per month witnessed by the club's security guards was insufficient to make this attack foreseeable. Applying District of Columbia case law, we conclude that the District of Columbia Court of Appeals would not look to whether the club exercised "exclusive control" over the alley, but would instead inquire whether the club put the alley to a "substantial special use." Because a reasonable jury could find facts establishing that the club put the alley to a substantial special use, and because evidence of two fights per month occurring in the alley could demonstrate foreseeability, we reverse and remand.

## I.

The Zei Club is a bar and dance club owned and operated by appellees Capital Management and Development Corporation; Menage Limited Partnership; Zei, Inc.; Capital Restaurant Concepts, Ltd.; Power Station Limited Partnership; and SJG Properties.[1] The club is not located on any particular street. Rather, it is abutted by alleys on each side and situated near the intersection of I and 14th Streets in Northwest Washington, D.C. It is surrounded by office buildings and only accessible via alleys. There are two main alleys leading to the club, one running east-west from 14th to 15th Street, named "Zei Alley," and another running from Zei Alley north to I Street (the "I Street alley"). At around 2:35 a.m. on March 23, 1998, Novak and Valdivia were attacked by a group of twelve to fifteen men in the I Street alley. At that hour, the front doors to the club were locked, and thus the rear exit onto the I Street alley was the only way to leave the club. Upon exiting, Novak and Valdivia turned south to head toward the entrance in order to exit through Zei Alley. They immediately encountered the men, who had been standing next to a wall in the I Street alley across from the rear exit. The group followed Novak and Valdivia for a few steps and attacked them within view of the exit. The assailants struck Valdivia several times with fists. They tripped Novak, then hit him in the back of the head with a wooden board.

Upon learning of the assault, two off-duty Metropolitan Police Department ("MPD") officers working security at the club, appellees Michael Braxton and Ricky Waller, ran out of

---

[1] For ease of reference, we will refer to the owners and operators of the Zei Club collectively as the "Zei Club" or "club."

the club, stopped the attack, and apprehended some of the assailants.[2] Novak and Valdivia had been beaten badly. Valdivia required emergency treatment and months of physical therapy and Novak emerged from a three-week long coma with permanent loss of various brain and motor functions.

The Zei Club employed fifteen security guards to protect against frequent fights in the club and knew that fights in the alley near the club's rear exit were common. Several former Zei Club security guards testified consistently that they witnessed between one and two fights a month in the alleys around the exit from the club and witnessed fights within the club with the same frequency.

Novak and Valdivia argued to the District Court that the Zei Club had a duty to protect departing patrons from fights it knew were likely to occur outside the club's sole exit. The Zei Club, on the other hand, argued that its duty to protect patrons was limited to the interior of the club and ended at the club's doorstep. The District Court agreed with the Zei Club and granted summary judgment in its favor. Looking to *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477 (D.C. Cir. 1970), the District Court held that a business has a duty to protect its patrons from criminal assaults on adjacent property only if "the criminal activity takes place 'in the portion of the premises *exclusively within [its] control*' and the business has '*exclusive power* to take prevent[]ive action.'" Dist. Ct. Op. at 5 (quoting *Kline*, 439 F.2d at 481) (first alteration in original;

---

[2] The Zei Club's own incident report from that night described another "confrontation" taking place inside the club at 2:30 a.m. "All persons involved in [the inside] incident," according to the report, were "ejected from the club." "Moments later," appellees Braxton and Waller were called "back outside to stop another fight that was going on."

emphasis added). The District Court concluded that the "Zei Club did not have *exclusive control* over the I Street alley" because it noted that the District of Columbia MPD had "discretion to close off all the alleys surrounding the Zei Club" to car traffic, its "officers patrolled the alleys," and "off-duty MPD officers employed by the Zei Club were not allowed to patrol the alleys because they were already covered by on-duty MPD officers." Dist. Ct. Op. at 9-10 (emphasis added). In the District Court's view, this lack of exclusive control over the I Street alley relieved the Zei Club of any duty of care to patrons using the alley to leave the club.

The District Court also held that no reasonable juror could find that the attack on Novak and Valdivia was foreseeable to the Zei Club. The Zei Club argued that there was no history of criminal assaults in the I Street alley and that in the fifteen months before the attack, police reports showed only three fights at the Zei Club—two inside and one outside. Dist. Ct. Op. at 6. Novak and Valdivia proffered contrary evidence demonstrating that criminal assaults were, in fact, common inside the club and in the nearby surrounding alleys. The District Court acknowledged that fights occurred as often as twice a month but concluded that these fights were not sufficiently "frequent." *Id*. at 7.

Novak and Valdivia also argued that the club failed to follow its own security policy, which, they alleged, required the club's guards to secure and patrol the adjacent alleyways. The club's alleged failure to follow this policy on the night of the attack amounted to, in the appellants' view, a breach of the club's duty to protect departing patrons. The District Court rejected this theory of negligence and concluded in the alternative that there was insufficient evidence of such a policy. *Id.* at 12, 14.

Novak and Valdivia filed a timely notice of appeal, invoking our jurisdiction under 28 U.S.C. § 1291. We review "the district court's grant of summary judgment *de novo*." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1031 (D.C. Cir. 2003). "Summary judgment is appropriate only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id*. at 1031-32 (quoting Fed. R. Civ. P. 56(c)). We "must view the evidence in the light most favorable to the nonmoving party," *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002), "and draw all reasonable inferences in [that party's] favor." *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Because we are reviewing a grant of summary judgment in favor of the club, we have stated the facts in the light most favorable to Novak and Valdivia. *See, e.g.*, *Info. Handling Servs.*, 338 F.3d at 1032.

## II.

Novak and Valdivia brought their common law tort claim in the United States District Court for the District of Columbia alleging diversity jurisdiction. Neither the parties nor the District Court questioned subject matter jurisdiction. They should have. When this appeal reached this Court, we requested that the parties brief jurisdictional problems apparent from the face of the complaint. Novak and Valdivia failed to allege their citizenship and the citizenship of two individual defendants, Michael Braxton and Ricky Waller, and claimed only that both plaintiffs and these two defendants were "residents" of Maryland. At the least, alleging that all plaintiffs and some defendants are "residents" of Maryland raises the concern that there might not be complete diversity between all plaintiffs and

all defendants.[3] But before that issue can be reached, plaintiffs' residency allegation raises a threshold problem: "an allegation of *residence* alone is insufficient to establish the *citizenship* necessary for diversity jurisdiction." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983) (emphasis added). Citizenship is an essential element of federal diversity jurisdiction; failing to establish citizenship is not a mere technicality. "[T]he party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Id*. at 792.

The complaint also contained no allegations regarding the states of incorporation and principal places of business of the corporate defendants, instead alleging only that one defendant, Capital Management and Development Corporation, operated a business in the District of Columbia. "[A] properly pleaded diversity action . . . will not only allege that there is diversity of citizenship, but will also advert to the factors set out by [28 U.S.C.] § 1332(c) that establish corporate citizenship." *District of Columbia* ex rel. *Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1043-44 (D.C. Cir. 1986). Thus, a complaint must provide "a statement of . . . the corporations' states of incorporation and their principal places of business." *Id*.

---

[3] Section 1332(a) of Title 28, United States Code, provides: "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." "When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) (emphasis in original).

Following our call for supplemental briefing, Novak and Valdivia moved to dismiss Braxton and Waller as dispensable, non-diverse parties pursuant to Fed. R. Civ. P. 21, which provides: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."[4] We granted the motion and dismissed Braxton and Waller from the lawsuit. The remaining appellees conceded that they "are to be deemed citizens of the District of Columbia." We also granted a motion by Novak and Valdivia to amend their complaint to plead citizenship properly, which they did.[5] With the case properly before us, we turn to the merits of this appeal.

## III.

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In *Lee v. Flintkote Co.*, 593 F.2d 1275, 1279 n.14 (D.C. Cir. 1979), we concluded that the *Erie* doctrine also applies to the District of Columbia. Thus, in "a diversity case, the substantive

---

[4] "Although the Federal Rules of Civil Procedure strictly apply only in the district courts," *Newman-Green*, 490 U.S. at 832, "the weight of authority favor[s] the view that appellate courts possess[] the authority to grant motions to dismiss dispensable nondiverse parties." *Id.* at 836. "Today [appellate] courts rely on . . . Federal Rule 21" for the authority to dismiss nondiverse parties. *Id.* In *Newman-Green*, the Supreme Court "decline[d] to disturb that deeply rooted understanding of appellate power." *Id.*

[5] Under the liberal amendment rule of 28 U.S.C. § 1653, "a party who has not proved, or even alleged, that diversity exists [may] amend his pleadings even as late as on appeal." *Transamerica*, 797 F.2d at 1044.

tort law of the District of Columbia controls." *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir 1998). Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case. *See Workman v. United Methodist Comm. on Relief*, 320 F.3d 259, 262 (D.C. Cir. 2003) (this Court "reason[s] by analogy from D.C. cases" to predict the law the District of Columbia Court of Appeals would apply if it decided this case).

A.  *The Zei Club's Duty Over an Adjacent Egress.*

In the District of Columbia, as elsewhere, "[t]o establish negligence a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *District of Columbia v. Beretta, U.S.A., Corp.*, 847 A.2d 1127, 1135 n.2 (D.C. 2004) (quoting *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001)) (quotation marks and alteration omitted). At issue in this case is whether the Zei Club had a duty to use reasonable care to protect Novak and Valdivia from criminal conduct in an alley used as the club's egress.

It is fundamental and well-settled that a business invitor has a duty of care to its patrons while they are on its premises. *See, e.g., Seganish v. District of Columbia Safeway Stores, Inc.*, 406 F.2d 653, 655 (D.C. Cir. 1968) (a business invitor's "duty is to exercise reasonable care to keep his place of business safe for the customer using it"); *Smith v. Safeway Stores, Inc.*, 298 A.2d 214, 216 (D.C. 1972) (discussing *Seganish*). In the District of Columbia, under *Viands v. Safeway Stores, Inc.*, 107 A.2d 118 (D.C. 1954), and its progeny, a business's duty extends to protecting its customers from foreseeable harm caused by third parties at its "exit doorway and the approach thereto." *Id.* at 121. In *Viands*, a customer leaving a grocery store through its only

exit tripped over a small wagon that had been left on a public sidewalk by some young boys. *Id.* at 119. Though not store employees, the boys customarily gathered outside the store to offer delivery services for a fee. *Id.* The trial court instructed the jury that "there can be no duty imposed on the defendant in this or any other case of this type with respect to space over which the defendant has no control and no legal opportunity for control." *Id.* The Court of Appeals disagreed, concluding that the trial court stated too narrow a view of a business's duty of care. *Id.*

Under *Viands,* business invitors in the District of Columbia have a duty of care to monitor the entrances and exits of their premises. "There is nothing novel or extraordinary surrounding the duty of an invitor to use care with reference to exits, entrances, and approaches to his premises." *Id.* at 119. This duty, the Court concluded, is well grounded in the common law and Supreme Court precedent:

> As long ago as 1881, the United States Supreme Court, speaking through Justice Harlan, stated the rule, "founded in justice and necessity and illustrated in many adjudged cases in the American courts" that an owner or occupant of land is liable to an invitee "for injuries occasioned by the unsafe condition of the land *or its approaches*, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation."

*Id.* at 119-20 (quoting *Bennett v. Louisville & Nashville R.R. Co.,* 102 U.S. 577, 580 (1881)) (emphasis added). Thus, a business invitor's duty does not strictly end at the shopkeeper's door. "[I]t has been specifically held," the Court observed, "that the duty to properly maintain approaches to an invitor's property

is not to be determined by the exact boundaries of the premises, and that such duty does not end at the door through which the invitee makes his exit." *Viands*, 107 A.2d at 120.

Businesses also have a well-settled duty, *Viands* noted, to protect invitees from foreseeable harm caused by third parties. "It has generally been held that the invitor is liable if he has not taken reasonable and appropriate measures to restrict the conduct of third parties of which he should have been aware and should have realized was dangerous." *Id*. *Viands* found persuasive the Restatement (First) of Torts § 348 (1939), which *Viands* summarized as follows: "an invitor is liable to a business invitee for injury caused by the accidental negligence or intentionally harmful acts of third persons if the invitor by the exercise of reasonable care could have (a) discovered that such acts were being done or *were about to be done*, and (b) protected the invitee by controlling the conduct of the third persons or giving a warning adequate to enable him to avoid the harm." *Id.* at 120-21 (emphasis in original).

*Viands* turned on the fact that even though the "paved public sidewalk" where the injury occurred was not on the business's premises, it was the sole exit from the store and an area that the business put to substantial use. There was a parking lot on either side of the sidewalk leading up to the grocery store. *Id*. at 118. To enter or exit the store, "customers [had to] cross [the] paved public sidewalk which leads up to the front of the store," to a door that was "the only entrance or exit for use of shoppers." *Id*. Thus, *Viands* held that a reasonable jury could conclude a grocery store was liable for failing to protect exiting customers from the foreseeable negligent acts of "agile, scurrying and troublesome boys" regularly located outside the store's sole exit. *Id.* at 121.

This Court encountered a similar issue shortly thereafter in

*Merriam v. Anacostia National Bank*, 247 F.2d 596 (D.C. Cir. 1957). In *Merriam*, a pedestrian was injured on a sidewalk in front of a bank under construction. *Id.* at 597-98. The construction allegedly created a dangerous condition on the sidewalk. We concluded a reasonable jury could find "that [the] bank had actual knowledge of the danger in time to afford protection." *Id.* at 598. The bank "could [not] stand by knowing a dangerous condition was being created on the public sidewalk in furtherance of [its] . . . private and special interests and be free from liability if [it] did nothing to protect the public from such danger." *Id.* Thus, "[w]here [a] public way is used by private parties for their own *private and special use*," those private parties "may be liable." *Id.* at 598 (emphasis added).

In *Quigley's Pharmacy, Inc. v. Beebe*, 261 A.2d 242 (D.C. 1970), applying *Merriam*, the Court of Appeals held that the "duty to invitees to maintain their safety" when invitees are traveling "directly and necessarily in the path of the entrance to adjacent private property" arises from a business "hav[ing] substantially used public space for a direct and special purpose in aid of [its] use of private property." *Id.* at 244; *cf. Brown v. Consol. Rail Corp.*, 717 A.2d 309, 316 n.9 (D.C. 1998) ("the common law duty . . . is 'not invariably [placed] on the person in whom the land is titled'") (quoting *Husovsky v. United States*, 590 F.2d 944, 953 (D.C. Cir. 1978)) (second alteration in original). In *Quigley's Pharmacy*, a woman walking to a nearby mailbox caught her heel in a hole on a heavily used public sidewalk twenty feet from the exit to a pharmacy she had just left. A jury awarded the woman damages. The Court of Appeals reversed, holding that the pharmacy had no duty of care because the plaintiff was not "attracted to the spot [where the injury occurred] as a calculated means of ingress or egress or for other business-related purposes." *Quigley's Pharmacy*, 261 A.2d at 244. The pharmacy derived no "substantial special use" from the path from its exit to the mailbox. *Id.* That is, the plaintiff was

"attracted to the spot" not by anything the pharmacy did, but by her decision to use the mailbox.

The District of Columbia's substantial special use test for when a business invitor's duty extends to an egress is consistent with the approach other courts have taken in applying the Restatement (Second) of Torts. Comment l to § 332(3) provides that an invitor has a duty of care for the "area included within the invitation." Restatement (Second) of Torts § 332 cmt. l (1965). According to Dean Prosser, the first reporter for the Restatement, "[t]his 'area of invitation' . . . extends to the entrance to the property, and to a safe exit." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 424 (5th ed. 1984) (footnote omitted). As the Fifth Circuit has explained, "the general law of torts, as reflected in the Restatement and in Prosser, does not preclude recovery against [a business invitor] for injury occurring in the entranceway to the defendants' premises." *Banks v. Hyatt Corp.*, 722 F.2d 214, 222 (5th Cir. 1984).

The Fifth Circuit in *Banks*, as well as our sister circuits, have adopted a "sphere of control" test which also recognizes a boundary of responsibility for proprietors that extends beyond their front door. *Banks* employed such a test in determining whether a hotel had a duty to protect a guest from a criminal assault just outside the hotel's exit and on a public sidewalk. *Id.* at 227. Applying the Restatement, the Third Circuit adopted that test in *Fabend v. Rosewood Hotels and Resorts, LLC*, 381 F.3d 152, 156 (3d Cir. 2004). "[W]hen an innkeeper possesses or exercises sufficient control over the property adjacent to his premises, he has the power to take protective measures to reduce the risk of injury on that property" and "has a duty to exercise it to the benefit of his patrons." *Id.* The sphere of control test, *Fabend* held, "requires that we look at the circumstances of the case to ascertain whether sufficient control exists over the

adjacent premises." *Id.*; *see Pacheco v. United States*, 220 F.3d 1126, 1132 (9th Cir. 2000) (where defendants charged permit fee for beach access, the Court looked to, among other things, whether "defendants exercised control over what visitors to the beach did" in determining whether defendants had a duty to warn of dangers in the water adjacent to the beach).[6]

The case before us raises this familiar issue of when a business invitor will be liable for a dangerous condition on adjacent land used as an entryway and approach. The District Court did not discuss the substantial special use test of *Viands*, *Merriam*, or *Quigley's Pharmacy*. Instead, with limited analysis,

---

[6] We note that several courts have applied tests similar to substantial special use or sphere of control. *See, e.g.*, *Zepf v. Hilton Hotel & Casino*, 786 A.2d 154, 162 (N.J. Super. Ct. App. Div. 2001) ("A defense witness testified that defendant provided security to protect its patrons and property. We fail to perceive how defendant would assert under these circumstances no duty to provide security on Providence Avenue when its property borders that street and its patrons could clearly traverse that street in entering and exiting its property."); *Southland Corp. v. Spencer*, 250 Cal. Rptr. 57, 61-63 (Cal. Ct. App. 1988) (in case of assault on adjacent property, where convenience store made use of that property for parking, duty of care extends); *Holiday Inns, Inc. v. Shelburne*, 576 So.2d 322, 329 (Fla. Dist. Ct. App. 1991) (in case of assault, bar had a "duty not only to its patrons who parked on the premises, but also to those who parked on the adjacent lots in accordance with the instructions of the security guards"); *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 769 (Ind. Ct. App. 1986) (duty of bar owner may extend to persons beyond boundaries of a tavern); *Ralls v. Noble Roman's Inc.*, 491 N.E.2d 205, 207-08 (Ind. Ct. App. 1986) (restaurant owner's duty of care extended to a yard adjacent to the restaurant); *Roe by M.J. v. N.J. Transit Rail Operations, Inc.*, 721 A.2d 302, 306-07 (N.J. Super. Ct. App. Div. 1998) (business invitor liable for rape that occurred in adjacent public park).

the District Court turned to *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, a preeminent case addressing a landlord's liability for conditions that are dangerous to tenants. 439 F.2d 477 (D.C. Cir. 1970). In the District Court's view, *Kline* stands for the following proposition: "A business owner has a duty of care to take preventative action if it has *exclusive power* over the area in which criminal activity occurs." Dist. Ct. Op. at 9 (citing *Kline*, 439 F.2d at 481) (emphasis added). Thus, because the MPD also patrolled the I Street alley at times, in the District Court's view, no other business invitor could "exclusively" control the I Street alley and therefore face liability. Presumably, then, *Viands*, *Merriam*, and *Quigley's Pharmacy* incorrectly suggest that business invitors can be liable for subjecting their patrons to dangerous conditions in their entryways and approaches because, under the District Court's reasoning, the police can always patrol a public area just beyond the shopkeeper's door and off the shopkeeper's property.

*Kline*, however, contains no such conflicting rule. The portion of *Kline* cited by the District Court addressed a specific duty of care: the duty of a landlord who "has notice of repeated criminal assaults and robberies." *Kline*, 439 F.2d at 481. *Kline* notes the "general rule [that] a private person does not have a duty to protect another from a criminal attack by a third person," but concludes that "the rationale of this very broad general rule falters when it is applied to the conditions of modern day urban apartment living." *Id.* Instead, the landlord-tenant context mandates a special standard of care:

> The landlord is no insurer of his tenants' safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises *exclusively within his control*, has every reason to expect like crimes to happen again,

> and has the *exclusive power* to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants.

*Id.* (emphasis added). Today, the duty discussed in *Kline* is well-known in the landlord-tenant world, just as *Kline* noted, the "innkeeper-guest relationship" has historically also been known to require a special duty of care by innkeepers. *Id.* at 482. The "exclusive power to take preventive action," *id.* at 481, referred to by *Kline*, however, addresses a landlord's duty when "tenants were being subjected to crimes against their persons and their property in and from *the common hallways*," *id.* at 483 (emphasis added). *Kline* concluded that landlords must exercise a duty of care for common hallways within their exclusive control, but had no occasion to address a business invitor's duty over adjacent property or the extensive case law addressing that area of tort law. Thus, *Kline* provides no support for the District Court's suggestion that a business invitor's liability for an entryway or approach should be governed by an "exclusive power" standard. To the contrary, extensive District of Columbia case law provides for a substantial special use standard, just as case law from other circuits prescribes a similar standard, and we have no basis for disturbing that precedent.

Looking at the facts in the light most favorable to appellants, and applying *Viands*, *Merriam*, and *Quigley's Pharmacy*, the Zei Club put the I Street alley to a substantial special use. *See Viands*, 107 A.2d at 119-21; *Merriam*, 247 F.2d at 598; *Quigley's Pharmacy*, 261 A.2d at 244. The Zei Club was set off from any public street and surrounded by alleys. Its patrons were invited to use the alleys as approaches and exits to the club. The attack occurred within a few steps of the exit in the I Street alley, which was the chief path of egress from the club. At the hour of the attack, the only exit from the club led to the

I Street alley. The exact spot of the attack was on a "calculated" and "necessary" egress. *Quigley's Pharmacy*, 261 A.2d at 244. No other businesses used the alley at that hour, and the Zei Club routinely used its security guards to clear the alley of loiterers and maintain order.[7]

B. *The Foreseeability of Intervening Criminal Conduct in an Egress.*

"It is axiomatic that under a negligence regime, one has a duty to guard against only foreseeable risks." *Doe v. Dominion Bank of Washington, N.A.*, 963 F.2d 1552, 1560 (D.C. Cir. 1992); *see Viands*, 107 A.2d at 121. "'As a general rule the proprietor of a place of public resort is subject to liability to his business invitees for injuries inflicted by the acts of other patrons or third persons if the proprietor by the exercise of reasonable care could have known that such acts were being done or were about to be done . . . .'" *Grasso v. Blue Bell Waffle Shop, Inc.*, 164 A.2d 475, 476 (D.C. 1960) (quoting *Gregorc v. Londoff Cocktail Lounge, Inc.*, 314 S.W.2d 704, 707 (Mo. 1958)).

The foreseeability required when the harm is caused by the criminal act of a third party, however, is more exacting. "Because of the extraordinary nature of criminal conduct,"

---

[7] The District Court pointed to evidence showing that some of the club's security guards—those who were off-duty MPD officers—were not allowed to patrol the alleys. Dist. Ct. Op. at 10 (citing D.C. Mun. Regs. tit. 6A § 301.2, which restricts off-duty MPD officers from patrolling areas where the MPD exercises "a special supervisory, regulatory, or enforcement function"). There is other record evidence indicating, however, that the club's security guards, including some off-duty MPD officers, routinely patrolled the alleys around the club.

liability depends on "a heightened showing of foreseeability in the context of an intervening criminal act." *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997) (quotation marks omitted). In *Workman,* we recently observed that the Court of Appeals has provided only limited "specific guidance," 320 F.3d at 262, on what a "heightened showing" of foreseeability requires, *id. Workman* explained:

> The District of Columbia Court of Appeals has said a "heightened showing" is required, the requirement is a "demanding" one, and the proof must be "precise." *Potts*, 697 A.2d at 1252. Foreseeability cannot be predicated upon "generic information" such as crime rates, [*Bailey v. District of Columbia*, 668 A.2d 817, 820 (D.C. 1995)], or evidence that the defendant's employees worked in a "criminally active environment," *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 429 (D.C. 1993). The plaintiff is not, however, required to show "previous occurrences of the particular type of harm"; the requirement "can be met instead by a combination of factors which give [the] defendant[ ] an increased awareness of the danger of a particular criminal act." *District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C. 1987).

320 F.3d at 262 (second and third alterations in original). After reviewing D.C. tort cases involving a third party's criminal conduct, we predicted in *Workman* that heightened foreseeability is present when there is a "special relationship" between the person injured by the crime and the defendant, and prior, similar criminal acts have occurred in the area where the

plaintiff was hurt. *Id.* at 264.[8]

"[T]he requirement that the defendant have been able to foresee that a third party would likely commit a criminal act," we explained, "ordinarily has, and perhaps must have, a relational component." *Id*. at 263. Cases in this area "suggest a sliding scale: If the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important, whereas if the relationship is not of a type that entails a duty of protection, then the evidentiary hurdle is higher." *Id*. at 264. We noted, for example, that in *District of Columbia v. Doe*, 524 A.2d at 33-34, the Court of Appeals determined a duty could exist where a criminal abducted a young girl from her classroom in a public school and raped her at a park across the street from the school. *Workman*, 320 F.3d at 263. The Court of Appeals found persuasive the fact that there was evidence of prior crimes occurring in and around the school (although there was no evidence that this exact crime occurred previously in this location) and the fact that the victim was a young schoolchild over whom the District of Columbia exercised custodial care. *Id.*

This Court, as *Workman* notes, *see id.*, looked to a special relationship and evidence of prior similar conduct in *Doe v. Dominion Bank*. There, a woman who had been raped on a vacant floor of an office building sued the landlord of the

_____

[8] We noted in *Workman* that "[o]rdinarily, the relationship between the parties is the key to determining whether the defendant had a legally enforceable *duty* to the plaintiff." *Id.* at 265 (emphasis added). D.C. courts, however, "have in more recent cases tended to leapfrog directly to the foreseeability issue, with the parties' relationship [being considered] a factor relevant to determining whether the requirement of *foreseeability* has been satisfied." *Id.* (emphasis added).

building. The District Court entered a directed verdict for the defendant, but we reversed because "[t]here was ample evidence . . . that the [landlord] had incessant notice of criminal activity—including theft, burglary, drug use, and possibly prostitution—ongoing at [the office building] during the two and a half years preceding Doe's rape." 963 F.2d at 1561. Although there was no evidence of criminal assaults, *see id.*, *Workman* noted that in *Dominion Bank* "the relationship between the plaintiff and the defendant suggested the defendant should be held liable . . . because the landlord was in the better position both to know about security threats and to protect against them." *Workman*, 320 F.3d at 263. The parties' special relationship and evidence of repeated intruders and prior nonviolent crimes made up for the lack of evidence of prior violent crimes. *Id*.

Looking to the existence of a special relationship is not novel; it is the basis for, and determines the contours of, the law of premises liability. The Restatement (Second) of Torts § 314A(3) (1965), provides: "[a] possessor of land who holds it open to the public is under a . . . duty to members of the public who enter in response to his invitation." The duty "arise[s] out of special relations between the parties, which create a special responsibility." *Id*. § 314A cmt. b. This "duty to protect the other against unreasonable risk of harm extends to risks arising . . . from the acts of third persons, whether they be innocent, negligent, intentional, or even criminal." *Id*. § 314A cmt. d.

Applying *Viands* and *Workman* to the facts before us and looking at those facts in the light most favorable to appellants, we conclude that a criminal attack on Novak and Valdivia in the I Street alley met the requirements of heightened foreseeability. The club, as business invitor, shared a special relationship with its business invitees, patrons Novak and Valdivia. *See Hall v. Ford Enters., Ltd.*, 445 A.2d 610, 611 n.4 (D.C. 1982) ("Traditionally, relationships that were considered to give rise

to a duty of one party to protect the other party from foreseeable criminal acts of third persons have included the relationships of landowner to invitee, businessman to patron, employer to employee, school district to pupil, hospital to patient, and common carrier to passenger."). Additionally, there is evidence that the Zei Club had "an increased awareness of the danger of a particular criminal act." *District of Columbia v. Doe*, 524 A.2d at 33. Novak and Valdivia proffered testimony from the club's security guards and other employees indicating that fights occurred in the club "once every two weeks at least," "twice a month," or "probably 1 a month or 1 a week." One employee testified that he saw fights in the alley by the exit "twice a month;" another said he saw "maybe 1 or 2 fights" each month in the alley by the exit.[9] If believed, this evidence certainly could put a reasonable club owner on heightened notice that a serious problem existed outside its door. *See Washington Metro. Area Transit Auth. v. O'Neill*, 633 A.2d 834, 840 n.11 (D.C. 1993) ("Virtually all courts and all commentators who have considered the issue have concluded that a common carrier's duty to its passengers includes a duty to protect them from assault by fellow passengers.") (quotation marks and alteration omitted).[10]

The Zei Club had notice that prior fights frequently occurred in and around the club. Indeed, in the words of the Zei

---

[9] Indeed, Novak and Valdivia allege that the club hired security guards precisely because fights occurred frequently in and around the club.

[10] *See* Restatement of Torts (Second) § 314A (1965) (requiring an "innkeeper" to observe "a similar duty to his guests" as a "common carrier," which "is under a duty to its passengers to take reasonable action . . . to protect them against unreasonable risk of physical harm"); *Bower v. O'Hara*, 759 F.2d 1117, 1124 (3d Cir. 1985) (applying the innkeeper duty of § 314A to a tavern owner).

Club's own incident report from the night of the attack, just "moments" prior to the assault on Novak and Valdivia, the club had ejected a group of patrons for fighting inside the club. Looking at the evidence in the light most favorable to Novak and Valdivia, the club cannot now seriously contend that an assault at its exit was not legally foreseeable. The club's special relationship, combined with significant evidence of repeated fights in and around the establishment, put this club on notice that its violence problem was not "sudden and unexpected," *Kline*, 439 F.2d at 483, such that it had no duty to foresee any problem in its alleys for its patrons. With notice of repeated fights on its premises and in its entryways and approaches, having made substantial special use of those entryways and approaches, with every reason to expect that fights would continue absent the exercise of reasonable care, and with the power to exercise reasonable care over entryways and approaches, a reasonable jury could believe Novak and Valdivia's evidence on prior similar conduct and conclude that the Zei Club failed to take reasonable steps to secure its alley.[11]

---

[11] The dissent argues that evidence of repeated "fisticuffs" (*i.e.*, fistfights) in and around the Zei Club was not sufficient to demonstrate the foreseeability of Novak and Valdivia being beaten on their way out of the club, and thus there was no need to ensure that the club's exit was secure. That is, if assailants routinely beat up on a club's patrons and yet fights generally rise only to the level of fisticuffs, a club has a duty to exercise reasonable care to try to prevent such fights. But it is entirely unforeseeable if an assailant *really* beats up on a club patron in a future fight. We respectfully do not see a basis for such a distinction and do not believe the District of Columbia Court of Appeals would endorse the dissent's suggestion that a business need only protect against an extremely precise level of past fighting.

In any event, there is no record basis for the dissent's labeling of the attack in this case as criminal "mayhem," *see* D.C. Code § 22-

**IV.**

Novak and Valdivia assert an alternative theory of negligence liability, arguing that the Zei Club had a security policy that mandated patrolling the alleys and that the club failed to follow that policy the night of the criminal attack. This alleged policy, in their view, demonstrates a duty, and failure to follow that policy demonstrates a breach of that duty. The District Court granted summary judgment to the Zei Club on this claim, holding that there is no such recognized theory of liability and that Novak and Valdivia failed to show that the club even had such a policy. Dist. Ct. Op. at 10-13.

Even assuming *arguendo* that failure to follow a security policy could establish negligence, we agree with the District Court that appellants offered insufficient evidence that such a policy existed. Appellants only offered testimony that Zei Club guards patrolled the alleys; they did not present any evidence showing that it was club policy to do so. Because there was no

406 (criminalizing mayhem), as distinguished from prior violence in and around the Zei Club that the dissent describes as mere, apparently noncriminal, "fisticuffs." For using wooden boards from the alley in carrying out their attack, the two assailants convicted in this matter faced judgments of conviction not on mayhem, but assault charges—one for assault with a dangerous weapon, *see* D.C. Code § 22-402, and the other for aggravated assault while armed, *see* D.C. Code §§ 22-404.01 and 22-4502. Moreover, the record indicates that this attack was yet another of many fights that occurred at the Zei Club. Contrary to the dissent's suggestion, past fighting at the club, *i.e.*, assaults upon patrons, would also be criminal, *see* D.C. Code § 22-401 to -405 (criminalizing assault), and perhaps even mayhem in some circumstances, *see id.* § 22-406. But most importantly, past fighting such as what occurred at the Zei Club could put a reasonable establishment on notice of highly similar violent acts being perpetrated against its patrons.

such evidence, we affirm the District Court's grant of summary judgment on this claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## V.

We vacate the District Court's judgment in favor of the defendants, reverse the District Court's grant of summary judgment on appellants' negligence claim as indicated, and remand the case for further proceedings consistent with this opinion.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring in part and dissenting in part:

While I concur in Part IV of the majority opinion affirming the district court's grant of summary judgment to the defendants on Novak's and Valdivia's alternative claim of negligence arising from the Zei Club's alleged failure to follow its security policy, I dissent from its holding reversing and remanding the district court's grant of summary judgment to the defendants as set forth in Part III thereof—that is, even assuming the Zei Club put the public alley outside its exit to "special use," the Zei Club is not liable for Novak's and Valdivia's injuries because the attack on them was not foreseeable.

Tort law adheres to a "general rule of nonliability . . . for harm resulting from the criminal acts of third parties." *Romero v. Nat'l Rifle Ass'n of Am., Inc.*, 749 F.2d 77, 81 (D.C. Cir. 1984) (citing *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 481 (D.C. Cir. 1970); *Hall v. Ford Enters., Ltd.*, 445 A.2d 610, 611 (D.C. 1982)). The District of Columbia Court of Appeals (D.C. Court of Appeals) has created an exception to this "general rule" if "the criminal act is so foreseeable that a duty arises to guard against it." *McKethean v. Wash. Metro. Area Transit Auth.*, 588 A.2d 708, 717 (D.C. 1991). While its articulation of the exception is hardly self-defining, our review of the case law suggested to us that "the requirement that the defendant have been able to foresee that a third party would likely commit a criminal act ordinarily has, and perhaps must have, a relational component." *See Workman v. United Methodist Comm. on Relief of Gen. Bd. of Global Ministries of United Methodist Church*, 320 F.3d 259, 263 (D.C. Cir. 2003). We found that the D.C. Court of Appeals in fact tends to follow a "sliding scale" whereby "[i]f the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important, whereas if the relationship is not of a type that entails a duty of protection, then

the evidentiary hurdle is higher." *Id.* at 264. The duty imposed, therefore, is one of degree: the closer the relationship between the plaintiff and defendant—that is, the more control the defendant exercises over the plaintiff—the more exacting the defendant's duty to provide for the plaintiff's well-being and, accordingly, the less necessary becomes "specific evidence of foreseeability."[1] *Id.* At one end of the scale—requiring less foreseeability—is a custodial relationship such as between a school and a student, *see District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C. 1987), while, at the other end of the scale—requiring specific foreseeability—is no relationship between the parties.

Here, a relationship existed between the Zei Club and Novak and Valdivia—that of invitor and invitees. Although the majority identifies the relationship, *see* maj. op. at 20, it does not determine where on the sliding scale it falls. A close reading of D.C. case law suggests, I believe, that the invitor-invitee relationship falls somewhere closer to the "no relationship" end of the scale—requiring fairly specific evidence of foreseeability. In recent cases involving the invitor-invitee relationship, the D.C. Court of Appeals held that the criminal acts of third parties were not sufficiently foreseeable to impose a duty on the invitor to protect the invitee. *Bailey v. District of Columbia*, 668 A.2d 817 (D.C. 1995), is instructive. In that case, Bailey was shot while exiting a cheerleading competition held at a D.C. junior

---

[1]The sliding scale makes sense if one views foreseeability as an aspect of the duty prong of the prima facie negligence case as the D.C. Court of Appeals does. *See McKethean*, 588 A.2d at 717. *But see* Restatement (Third) of Torts § 40 cmt. K ("However, consistent with its treatment throughout this Restatement, this subsection rejects the requirement of knowledge (or foreseeability) of the danger as an aspect of the duty.").

high school. The defendant District moved for summary judgment and, in response, Bailey submitted affidavits of witnesses who testified that the neighborhood in which the school was located was a "high drug area" and that shootings and other violent crimes had taken place nearby. *Id.* at 820. The trial court granted the District summary judgment, concluding that

> [t]he question is not whether defendant should have known that fights, or minor scuffles might erupt at this gathering of 500-600 people on school property in the absence of an adequate security presence, including at the least a police cruiser. Rather, the question is whether the District had a duty to guard against a reasonably foreseeable risk that a person attending the competition would decide to settle a dispute with another individual over an item of clothing by indiscriminately shooting at that person while in the midst of a crowd of spectators.

*Id.* at 819–20 (alteration in original) (quoting trial court order). The D.C. Court of Appeals expressly agreed with the trial court's analysis of the foreseeability issue. It dismissed Bailey's evidence as "generic information," insufficient to establish the foreseeability of the particular type of violent crime at the particular location. Critically, the court observed that "there was no evidence of prior gun-related violence or assaults occurring at the school or at any of the many cheerleading competitions that had been held anywhere in the city." *Id.* at 821.

More recently, in *Potts v. District of Columbia*, 697 A.2d 1249 (D.C. 1997), the plaintiffs were shot while leaving the Washington Convention Center (WCC) after having attended a boxing match. They sued Spencer Promotions, the event's organizer, and the District, the WCC's owner. The D.C. Court of Appeals affirmed the trial court's grant of summary judgment

to the defendants because the "plaintiffs [had] proffered no evidence of any prior gun-related violence at any other event held at the WCC or promoted by Spencer Promotions, nor any other specific evidence bearing directly on the foreseeability of the shooting incident at issue here." *Id.* at 1252.

I believe that the invitor-invitee relationship is akin to the employer-employee relationship and falls at about the same place on the "sliding scale." The D.C. Court of Appeals requires fairly specific evidence of foreseeability in the employer-employee context. In *Clement v. Peoples Drug Store*, 634 A.2d 425 (D.C.1993), an employee's widow sued the deceased's employer after he was fatally shot in the employer's parking lot. The plaintiff offered an expert witness who testified about criminal activity in the surrounding area. The court held that the plaintiff failed to show that the criminal act was foreseeable because "[n]o evidence was introduced involv[ing] any gun-related incidents at the particular shopping mall in which the shooting occurred." *Potts*, 697 A.2d at 1252 (summarizing *Clement*'s holding).

Ignoring cases directly on point—that is, cases involving an invitor's duty to protect an invitee from the criminal acts of third parties—the majority finds that the relationship between the Zei Club and Novak and Valdivia frees the two plaintiffs from having to produce "specific evidence" that the criminal act was "particularly foreseeable." *Workman*, 320 F.3d at 262–63; *see* maj. op. at 20–22. But the D.C. Court of Appeals has recently observed that "*Potts*, *Bailey*, and *Clement* . . . demonstrate the tight boundaries—requiring precise proof of a heightened showing of foreseeability." *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 643 (D.C. 2005) (internal quotation marks and citations omitted). The three cases manifest that, when suing an invitor, the invitee must show that the particular type of criminal act at the particular location was

foreseeable. *See Potts*, 697 A.2d at 1252 ("In this case, as in *Bailey* and *Clement,* plaintiffs proffered no evidence of any *prior gun-related violence* at any other event held at the WCC or promoted by Spencer Promotions." (emphasis added)); *Clement*, 634 A.2d at 429 ("For example, only one offense, a robbery at a nearby Giant supermarket, *involved a firearm* and *no homicides* had been reported." (emphasis added)); *Bailey*, 668 A.2d at 820 ("Bailey proffered no evidence of *any shooting incidents, assaults, or other gun-related violence* at any Department cheerleading competition or any other Department event held at Evans Junior High School" (emphasis added)). Novak and Valdivia have failed to make this showing. Police reports from the 15 months preceding Novak's and Valdivia's injuries show only three incidents occurring at the Zei Club: two incidents involving fights between patrons *inside* the club and a third incident just outside the doorway involving an employee of the club. *See Novak v. Capital Mgmt. & Dev. Corp.*, No, 01-cv-39, slip op. at 6 (D.D.C. July 12, 2004). Similarly, the Zei Club's internal records show no fights occurring in either the I Street alley or the Zei Street alley. Appellants' Br. 15; Appellees' Br. 15. Viewing the evidence in the light most favorable to them, as we must at the summary judgment stage, *see Crawford v. Signet Bank*, 179 F.3d 926, 928 (D.C. Cir. 1999), Novak and Valdivia have shown only that altercations occurred in either of the two alleys as often as twice each month and that they ranged from "pushing to fist fights." *See* maj. op. at 3 (describing alleys' location). All they have shown, however, is that "fights, or minor scuffles might erupt" in the I Street alley. *Bailey*, 668 A.2d at 819. Fisticuffs is not what occurred here. In Novak's and Valdivia's own words, they were the victims of a "vicious and deadly assault by which [the perpetrators] sought to kill and/or seriously injure [them]." Compl. ¶ 42. In short, the perpetrators lay in wait for them

intending to commit mayhem[2]—a criminal act that was wholly unforeseeable.[3] Because they have failed to establish an essential element of their claim, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), that is, "the criminal act is so foreseeable that a duty arises to guard against it," *McKethean*, 588 A.2d at 717 (internal quotation marks and citation omitted), I would affirm the district court's grant of summary judgment to

---

[2]As the majority notes, *see* maj. op. at 4, the injuries Novak and Valdivia sustained manifest that their attackers committed mayhem, regardless what crime they were charged with. The D.C. Court of Appeals has held that "essential elements of the crime of mayhem are: (1) that the defendant caused permanent disabling injury to another; (2) that he had the general intent to do the injurious act; and (3) that he did so willfully and maliciously." *Peoples v. United States*, 640 A.2d 1047, 1054 (D.C. 1994) (internal quotations and citations omitted).

[3]The majority claims I imply that pushing/fisticuffs is "noncriminal." Maj. op. at 23 n.11. Not so. Certain crimes—*e.g.*, attempted murder (which is what Novak and Valdivia allege their attackers committed, *see* Compl. ¶ 42)—are simply more egregious than others—*e.g.*, simple assault (that is, fisticuffs/pushing). The majority also characterizes my dissent as concluding that fisticuffs may have been foreseeable but "really beating" someone was not. Maj. op. at 22 n.11 (emphasis omitted). If the majority equates "really beating" with attempted murder, then, yes, I believe fisticuffs may have been foreseeable but attempted murder ("really beating" with the intent to kill) was not. Just as an occasional pickpocket does not, under District of Columbia precedent, make foreseeable an armed robbery, an occasional drunken shoving match does not make attempted murder foreseeable.

the defendants. Accordingly, I respectfully dissent from the reversal and remand of the district court's grant of summary judgment to the defendants as set forth in Part III of the majority opinion.