# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted November 14, 2008          Decided June 26, 2009

No. 08-7135

DOMINIC NOVAK,
APPELLEE

v.

CAPITAL MANAGEMENT AND DEVELOPMENT CORPORATION,
ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-00039-HHK)

*Brian E. Hoffman* argued the cause for appellants. With him on the briefs was *Jeffrey R. Schmieler*.

*Patrick M. Regan* argued the cause and filed the briefs for appellee.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:   A group of men attacked and brutally beat appellee Dominic Novak moments after he left a nightclub in 1998.  The club required patrons to leave the building through a single door that led into an alley, and the attack occurred in close proximity to that door.  Although the club employed several security officers, they were all inside the building during the beating.  Novak, who sustained permanent injuries, brought this diversity action against the club, alleging negligence under District of Columbia law.

The district court initially granted summary judgment in favor of the club, holding that the club owed Novak no duty of care because the attack occurred in a public alley, and that the criminal assault was not foreseeable.  In July 2006, a panel of this court reversed and remanded, determining that a reasonable jury could find that the club owed Novak a duty if it put the alley to a substantial special use, and that evidence of frequent fights in the alley could establish foreseeability.  The case proceeded to trial and, in May 2007, a jury found in favor of Novak and awarded him damages.

The club now appeals, contesting the district court's judgment on a number of grounds.  We reject those challenges and affirm the judgment.

I

This court's 2006 opinion reversing summary judgment in favor of the club describes the facts surrounding the attack.  *See Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902 (D.C. Cir. 2006) (*Novak I*).  We reprise them in somewhat less detail here.

3

Appellants owned and operated the Zei Club, a bar and dance club located in northwest Washington, D.C.[1] The club was situated next to -- and was only accessible through -- two alleys that formed an upside-down T shape, "one running east-west from 14th to 15th Street, named 'Zei Alley,' and another running from Zei Alley north to I Street (the 'I Street alley')." *Novak I*, 452 F.3d at 904. The club's front entrance was located at the southeast corner of the building, which lay at the intersection of the two alleys; its back door was at the northeast corner, which abutted the I Street alley. J.A. 3001 (Pl.'s Ex. 1). At closing time, the club required patrons to depart through the back door, which locked behind them to prevent re-entry. Patrons then had to walk south down the I Street alley to return to Zei Alley.

In the early morning of March 22, 1998, Novak visited the club with a group of friends. He left the club through the back door -- the only available exit -- at approximately 2:35 a.m., and turned south on the I Street alley. At that time, twelve to fifteen men were standing together next to a wall in the alley. Moments after Novak left the club, and "within view of the exit," the men attacked Novak and other members of his party. *Novak I*, 452 F.3d at 904. The men struck Novak's friend John Henderson first, before attacking Novak. Near the end of the assault, which lasted for approximately five minutes, the assailants "tripped Novak, then hit him in the back of the head" with wooden boards. *Id.*

---

[1]Appellants are Capital Management and Development Corporation; Menage Limited Partnership; Zei, Inc.; Capital Restaurant Concepts, Ltd.; and Power Station Limited Partnership. For ease of reference, we refer to appellants collectively as "the Zei Club" or "the club."

Although the Zei Club maintained a private security team of fifteen people and also employed two off-duty Metropolitan Police Department (MPD) officers, all employees were inside the club when the assault began. When the MPD officers working security learned of the attack, they "ran out of the club, stopped the attack, and apprehended some of the assailants." *Id.* at 905. Novak sustained severe injuries as a result of the beating. He underwent emergency brain surgery immediately after the attack and was in a coma for nearly three weeks. He suffered permanent brain damage, loss of motor functions, speech disturbance, and loss of strength.

Novak filed suit against the Zei Club in the United States District Court for the District of Columbia, invoking the court's diversity jurisdiction. He alleged that the club was liable for the common law tort of negligence because it did not protect him from a foreseeable fight in the alley abutting the club's only exit. The district court initially granted summary judgment in the club's favor, concluding that its "lack of exclusive control" over the I Street alley "relieved the Zei Club of any duty of care to patrons using the alley to leave the club." *Id.* The court also held that the criminal attack on Novak was not foreseeable. Although the court "acknowledged that fights occurred as often as twice a month[, it] concluded that these fights were not sufficiently 'frequent.'" *Id.* (quoting *Novak v. Capital Mgmt. & Dev. Corp.*, No. 01-0039, Mem. Op. at 7 (D.D.C. July 12, 2004)).

A previous panel of this court reversed the grant of summary judgment on both grounds. The court explained that the District of Columbia employs a "substantial special use" test, rather than an exclusive control test, to determine "when a business invitor's duty extends to an egress." *Id.* at 909. Reviewing the facts in the light most favorable to Novak, the court concluded that a reasonable jury could find that "the Zei

Club put the I Street alley to a substantial special use." *Id.* at 911. The facts relevant to that conclusion were as follows:

> The Zei Club was set off from any public street and surrounded by alleys. Its patrons were invited to use the alleys as approaches and exits to the club. The attack occurred within a few steps of the exit in the I Street alley, which was the chief path of egress from the club. At the hour of the attack, the only exit from the club led to the I Street alley. The exact spot of the attack was on a "calculated" and "necessary" egress. No other businesses used the alley at that hour, and the Zei Club routinely used its security guards to clear the alley of loiterers and maintain order.

*Id.* (citation omitted).

The previous panel also held that a reasonable jury could find that the criminal attack on Novak met the standard of foreseeability required under District of Columbia case law. *Id.* at 913. As the court explained:

> Novak . . . proffered testimony from the club's security guards and other employees indicating that fights occurred in the club "once every two weeks at least," "twice a month," or "probably 1 a month or 1 a week." One employee testified that he saw fights in the alley by the exit "twice a month;" another said he saw "maybe 1 or 2 fights" each month in the alley by the exit. If believed, this evidence certainly could put a reasonable club owner on heightened notice that a serious problem existed outside its door. . . . Indeed, in the words of the Zei Club's own incident report from the night of the attack, just "moments" prior to the

assault on Novak[,] . . . the club had ejected a group of patrons for fighting inside the club.

*Id.* at 913-14 (footnote omitted). In addition, "[t]he club, as business invitor, shared a special relationship with its business invitees, [including] . . . Novak." *Id.* at 913. Drawing all inferences in Novak's favor, the court determined that "the club cannot now seriously contend that an assault at its exit was not legally foreseeable." *Id.* at 914.

In summary, the court concluded that:

> With notice of repeated fights on its premises and in its entryways and approaches, having made substantial special use of those entryways and approaches, with every reason to expect that fights would continue absent the exercise of reasonable care, and with the power to exercise reasonable care over entryways and approaches, a reasonable jury could believe Novak['s] . . . evidence on prior similar conduct and conclude that the Zei Club failed to take reasonable steps to secure its alley.

*Id.* Accordingly, we vacated the district court's grant of summary judgment and remanded the case for further proceedings. *Id.* at 915.

After our ruling in *Novak I*, the case proceeded to trial. During the trial, Novak presented evidence consistent with his proffer of testimony at the summary judgment stage. Regarding substantial special use, witnesses at trial testified, inter alia, that: the Zei Club required people seeking to enter the club to form a line in the I Street alley, and security personnel maintained order in the line; the club forced patrons to depart through a single exit abutting the alley; and Novak's party was first attacked in the

alley in close proximity to the exit. Regarding foreseeability, the evidence was as follows: one former Zei Club security officer testified that he observed an altercation in the club or in the alley "at least on a weekly basis" and that he was aware of gang members taking materials from the Zei Club's dumpsters to use in assaults on others; another employee stated that patrons in the club were ejected from the premises "twice a month" and that he witnessed altercations in the alley with the same frequency; the club's former head of security stated that the club ejected patrons who were fighting "every two or three weeks"; and one of the off-duty MPD officers who worked security testified that he became involved in customer altercations at the club "once or twice a month." J.A. 2055-56, 2229, 2723, 2830. In addition, Novak introduced into evidence the club's incident report, which stated that patrons fighting inside were "ejected from the club" just "[m]oments" before the attack on Novak. J.A. 3021 (Pl.'s Ex. 6).

Novak also presented evidence at trial indicating that the absence of security personnel guarding the club's exit was a substantial factor contributing to his injuries. Witnesses testified that the attack lasted for nearly five minutes, that the assailants did not strike Novak's head with boards until the end of this time period, and that the attack ceased immediately once the off-duty MPD officers rushed outside and intervened. Reviewing this testimony, Novak's security expert stated that, in his opinion, the lack of security in the alley proximately caused Novak's injuries. The expert also testified that the Zei Club had violated a national standard of care by not posting security guards outside its exit at closing time until all patrons had dispersed. He described this security measure as the "standard practice," *id.* at 2114, and he named other nightclubs in the District of Columbia that employed it.

The jury returned a verdict for Novak and awarded him damages of $4,111,772. After the verdict, the Zei Club filed motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and for a new trial under Rule 59. The district court denied both motions. *Novak v. Capital Mgmt. & Dev. Corp.*, No. 01-0039, Order (D.D.C. July 28, 2007). The club now appeals.[2] In Part II, we consider the club's contention that it was entitled to judgment as a matter of law based on the insufficiency of Novak's evidence and on his assumption of the risk of injury. In Part III, we address its argument that the district court failed to instruct the jury regarding Novak's obligation to prove the club's substantial special use of the alley.[3]

---

[2]We initially dismissed an appeal by the club for lack of jurisdiction because its cross-claims against four individuals alleged to have assaulted Novak remained pending, and the district court's judgment on the verdict was therefore not final. *See Novak v. Capital Mgmt. & Dev. Corp.*, 298 Fed. Appx. 1 (D.C. Cir. 2008). We advised the parties, however, that "in the interest of sparing [them] further expenditure of resources," if they obtained a final judgment as to all of the claims and parties and filed a notice of appeal within thirty days, we would permit them "to proceed on the new appeal on the basis of the briefs and record previously submitted and on the oral argument previously heard." *Id.* at *2; *see Chvala v. D.C. Transit Sys., Inc.*, 293 F.2d 519, 521 (D.C. Cir. 1961); *Pons v. Republic of Cuba*, 288 F.2d 879, 880 (D.C. Cir. 1961); *see also* 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2660, at 152-53 & n.19 (3d ed. 1998). Following our ruling, the district court dismissed the cross-claims and the parties obtained a final judgment. Because the club filed its notice of appeal within thirty days of the date of our dismissal, we now consider its appeal on the basis of the previously submitted briefs and record and on the previous oral argument.

[3]The Zei Club also contends that the district court improperly instructed the jury regarding proximate cause and vicarious liability,

9

II

The Zei Club contends that the district court erred in denying its motion for judgment as a matter of law. We review such a denial *de novo*, but "[w]e do not . . . lightly disturb a jury verdict. Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor.'" *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007) (quoting *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000)). We first discuss the club's contention that there was insufficient evidence to support the jury's verdict; we then consider its argument that Novak assumed the risk of injury as a matter of law.

A

The Zei Club's arguments relating to the sufficiency of the evidence merit only brief discussion. The club contends that there was insufficient evidence of substantial special use, foreseeability, proximate cause, and a national standard of care.

*Novak I* forecloses the club's challenge regarding the sufficiency of the evidence of substantial special use. As explained in Part I above, the evidence Novak introduced at trial relating to this issue was nearly identical to that which he presented at the summary judgment stage. Indeed, at oral

---

erroneously used a general verdict form rather than one posing specific interrogatories, and improperly admitted certain evidence. We have considered and rejected these arguments, which are either too insubstantial for extended discussion or are waived because the club omitted them from its opening brief and raised them only in its reply brief. *See, e.g.*, *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C. Cir. 2002).

argument we asked the Zei Club's counsel whether there was any fact relating to substantial special use that was listed in *Novak I* but that did not come into evidence at trial. He could not cite a single one. Oral Arg. Recording at 9:24-10:22. In *Novak I*, we reversed the grant of summary judgment in the club's favor because, based on the evidence then before the district court, a reasonable jury could find that "the Zei Club put the I Street alley to a substantial special use." 452 F.3d at 911. Based on the same evidence presented at trial, a reasonable jury could -- and did -- find that the club made substantial special use of the alley. *See generally Borgo v. Goldin*, 204 F.3d 251, 254 (D.C. Cir. 2000) (noting that neither summary judgment nor judgment as a matter of law may be granted if "a reasonable jury could return a verdict for the nonmoving party" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

*Novak I* also precludes the club's argument regarding the sufficiency of the evidence of foreseeability. Again, Novak's evidence at trial relating to foreseeability mirrored the testimony he proffered at the summary judgment stage. Based on that evidence, we concluded in *Novak I* that "the club cannot now seriously contend that an assault at its exit was not legally foreseeable." 452 F.3d at 914. There is no ground to reach a different conclusion after trial.

Nor does the club fare any better with its contention that there was insufficient evidence of proximate cause. The club argues that its failure to provide security in the I Street alley could not qualify as the proximate cause of Novak's injuries because no evidence established that "the presence of one or both of the off-duty officers on the outside of the exit door rather than the inside of the exit door would have deterred or prevented the attack." Appellants' Br. 30. But Novak did present evidence that the absence of security personnel guarding the exit was a substantial factor contributing to his injuries. *See Lacy v.*

*Dist. of Columbia*, 424 A.2d 317, 319-22 (D.C. 1980) (applying a "substantial factor test" to determine whether a defendant's negligence was the proximate cause of an injury involving the criminal acts of a third party). Several witnesses testified that the attack lasted for nearly five minutes, that the assailants did not strike Novak's head with boards until the end of that time period, and that the attack ceased immediately once the off-duty MPD officers rushed outside and intervened. In light of this evidence, the jury could have reasonably concluded that security officers standing outside the exit would have deterred Novak's assailants from attacking him in the first place, or would have broken up the fight before it escalated and caused him such serious harm.

We are also unpersuaded by the club's challenge to the sufficiency of the evidence of a national standard of care. Under District of Columbia law, an expert testifying about a national standard of care must describe a specific standard rather than refer generally to safety, *see Pannell v. Dist. of Columbia*, 829 A.2d 474, 479-80 (D.C. 2003), and must show that the standard is accepted in the industry, *see Clark v. Dist. of Columbia*, 708 A.2d 632, 635 (D.C. 1997); *see also Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 847 (D.C. Cir. 2007) (explaining that "an expert may support a purported standard by showing that it has been accepted as controlling in facilities and enterprises that are similar to defendants' facilities or enterprises").

In this case, Novak presented the opinion of a security expert, Norman Bates, who testified that the Zei Club violated a national standard of nightclub security by failing to post security personnel outside its exit at closing time until patrons dispersed. J.A. 2114 (stating that it was the "standard practice," "widespread practice," and "normal practice" to station security guards outside "with a special focus . . . at the end of the night

when people are leaving . . . to be outside to monitor the crowd"); *see id.* at 2128, 2145-46. This testimony satisfied the requirement of D.C. law that an expert testify about a specific standard of care, rather than merely about the generalized objective of safety. Bates also testified that other nightclubs place security guards at their exits. *See, e.g.*, *id*. at 2115, 2118. He specifically named four D.C. nightclubs that follow the practice, *id.* at 2146, and he relied on testimony by the Zei Club's former general manager, who was unable to name a single professionally run nightclub in the District that does not position security personnel outside, *id.* at 2146, 2177. This factual basis for the expert's asserted standard of care was comparatively thin, *see Butera v. Dist. of Columbia*, 235 F.3d 637, 659-60 (D.C. Cir. 2001) (cataloguing D.C. cases in this area of the law), but it was sufficient to establish that the standard Bates articulated was in effect at comparable facilities, *see Dist. of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987) (holding that an expert established a national standard of care for police officer training by testifying that police departments throughout the country commonly trained officers to deal with mentally disturbed persons and by naming several departments that offered such training).[4]

---

[4]We also reject the club's argument that Bates' testimony did not meet the standard of admissibility announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 152 (1999) (holding that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," and that "the trial judge must have considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable").

B

The club further contends that the district court should have granted its motion for judgment as a matter of law, as well as its earlier motion for summary judgment, based on Novak's alleged assumption of the risk by "voluntarily . . . join[ing] the fight . . . to assist his friend" John Henderson, whom the group of men attacked first. Appellants' Br. 20. Under District of Columbia law, assumption of the risk "is an affirmative defense in all negligence actions and if properly invoked, it may operate as a complete bar to liability." *Morrison v. MacNamara*, 407 A.2d 555, 566 (D.C. 1979). "[T]he princip[al] elements of the defense are an actual knowledge and comprehension of a danger caused by the defendant's negligence and the plaintiff's voluntary exposure to that known danger." *Id.* at 567. Because this inquiry generally requires analysis of complex and case-specific factors, "the determination as to whether or not a plaintiff assumed the risk is a question of fact usually to be determined by the jury." *Id.* at 568.

According to the Zei Club, Novak assumed the risk of injury because he knowingly and voluntarily became part of an ongoing fight after the assailants attacked Henderson. Although the club claims that Novak did not dispute at the summary judgment stage that he "rushed back up the alley and joined the fight to aid [Henderson]," J.A. 225 (Defs.' Statement of Undisputed Facts), in fact Novak vigorously contested this characterization of the events. In his opposition to the club's summary judgment motion, Novak stated that he "became part of the melee involuntarily, as it developed around [him]," *id.* at 410, and he proffered Henderson's deposition testimony that Novak was only seven feet away when the attack began, *id.* at 449. In light of this genuine issue of material fact, the district court properly denied the club summary judgment on the issue of assumption of the risk.

Nor was the club entitled to judgment as a matter of law after the jury rendered its verdict in favor of Novak. Viewing the evidence in the light most favorable to Novak, a reasonable jury could have found that Novak did not voluntarily enter the fray, but rather was swept up in the attack. One of Novak's friends testified that Novak left the club first, with Henderson "just behind him." *Id.* at 1913. The group "hadn't gone four or five feet" when Henderson was attacked, *id.* at 1915, suggesting that Novak was just a few steps ahead and could easily have been caught up in the fight against his will. Indeed, Novak's sister, who was present in the I Street alley and witnessed the attack, testified at trial that "there was nowhere to really go, so [the assailants] just all came towards us." *Id.* at 1949.

The jury could also have reasonably believed that Novak did not voluntarily assume the risk of injury because the negligence of the Zei Club "left him no reasonable alternative course of conduct in order to avert harm to himself or another." RESTATEMENT (SECOND) OF TORTS § 496E(2)(a) (1965). The club misstates D.C. law when it asserts that "the reasonableness of defending a friend has no impact on the defense of assumption of the risk, and in fact proves it." Appellants' Br. 21 n.8. To the contrary, "[o]ne who endeavors to safeguard others against a threat of injury posed by a defendant's negligence does not voluntarily assume the incidental risks where the alternative is to suffer a continuation of the danger." *Aylor v. Intercounty Constr. Corp.*, 381 F.2d 930, 934 n.9 (D.C. Cir. 1967) (citing RESTATEMENT (SECOND) OF TORTS § 496E(2)(a)); *see also Kanelos v. Kettler*, 406 F.2d 951, 955 (D.C. Cir. 1968) ("The rescuer who extricates another from harm threatened by a third person does not assume the risk as against the latter where the only remaining choice is acquiescence in continuance of the peril.").

Finally, even if the jury believed that Novak voluntarily entered the fight, it could still have reasonably found that he did not fully appreciate the danger of the situation. *See Morrison*, 407 A.2d at 566-67 ("[T]he evidence must show that the plaintiff possessed full comprehension and appreciation of the danger."). When Novak initially became involved in the fight, his assailants were only using their fists. Near the end of the five-minute attack, however, they picked up wooden boards and used them to beat Novak over the head. Facing an analogous situation in *Sinai v. Pollinger Co.*, the District of Columbia Court of Appeals concluded that the plaintiff had not assumed the risk of injury. 498 A.2d 520, 524-25 (D.C. 1985). In that case, the plaintiff was accosted by a man at the front entrance of an apartment building. When the plaintiff voluntarily followed his assailant out to the parking lot, the assailant pulled a gun from his car and shot him. The court held that the plaintiff had not assumed the risk of injury by following the assailant to the parking lot because "the gun . . . introduced a 'new element' into the situation," which "escalated the conflict, transforming it from one whose risks were more or less known into one whose potentialities [the plaintiff] could in no way have anticipated." *Id.* In this case, the attackers' use of the boards as weapons qualifies as a "new element" that transformed the risks Novak confronted.

Accordingly, we conclude that the district court properly rejected the club's motions for summary judgment and judgment as a matter of law.

## III

The Zei Club also maintains that the district court failed to instruct the jury regarding the doctrine of substantial special use. "An alleged failure to submit a proper jury instruction is a question of law subject to *de novo* review; the choice of the

language to be used in a particular instruction, however, is reviewed only for abuse of discretion." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993).

The club contends that "the trial court . . . deleted the issue of 'substantial special use' entirely from the instructions given to the jury." Appellants' Br. 13. That contention is factually incorrect. As part of the jury instructions, the district court stated:

> In this case the plaintiff, Dominic Novak, claims that the defendants are liable to him for the damages he sustained on March 22nd, 1998, because they were negligent. Specifically, Mr. Novak claims that defendants did not properly monitor the exit of the Zei Club and the alley beyond the exit, which is property not owned by the Zei Club, *because the Zei Club put that area to a substantial special use*.
>
> The plaintiff must prove that the defendants were negligent, and that such negligence proximately caused the plaintiff's injuries and damages. The plaintiff must prove both negligence and damages by a preponderance of the evidence.

J.A. 2963-64 (emphasis added). In context, the court listed substantial special use as an element of Novak's "[s]pecific[]" claim of negligence, and the court's subsequent references to "negligence" are reasonably construed as using the term as shorthand that incorporated that element. Thus, when the judge immediately followed the reference to substantial special use with the instruction that "[t]he plaintiff must prove that the defendants were negligent," he effectively stated that Novak bore the burden of proving that the Zei Club did not properly

monitor its exit and the alley, and that the club put that area to a substantial special use.

Indeed, both parties recognized that the jury instructions made proof of substantial special use a part of Novak's negligence claim. In his summation, Novak's counsel read the instruction defining the negligence claim and then stated:

> Okay. What does that mean? How did the Zei Club put that alley, the I Street alley where this assault occurred, how did they put that to a substantial special use? They locked the front entrance, they forced patrons to go out into that alley. . . . They lined up patrons from the Zei street alley. . . . Two thousand five hundred patrons on a Saturday night would be forced out that exit down that alley or up to the left. That's what we mean by substantial special use.

*Id.* at 2905. Similarly, the Zei Club's own counsel told the jury in his closing argument that Novak had not met his burden of proving substantial special use, as the jury instructions required:

> Plaintiff's burden in this case, *and you'll see it on page six of the jury instructions*[,] . . . is to demonstrate that the Zei Club put the I Street alley to a substantial special use. What evidence has been presented in this case? The I Street and Zei alleys were both public alleys open to pedestrians and motorists. The Zei Club had no right to control either alley. They couldn't clear them, fence them, block them, close them or patrol them. . . . [Novak's counsel] has completely failed in this case to present any evidence of special use for control of those alleys.

18

*Id.* at 2935-36 (emphasis added). Although the district court could certainly have expanded its discussion of substantial special use, the charge that it entirely "deleted" the issue from the jury instructions is simply untrue.[5]

IV

For the foregoing reasons, we find no merit in the arguments that the Zei Club has raised on this appeal. The judgment of the district court is therefore

*Affirmed.*

---

[5]In its reply brief, the Zei Club changed tack and objected that the district court failed to define the term "substantial special use" for the jury. The club has waived this argument by waiting until its reply brief to make it. *See World Wide Minerals*, 296 F.3d at 1160; *see also Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221(D.C. Cir. 1996) (explaining that, "[t]o prevent . . . sandbagging of appellees and respondents," the court treats an argument as waived when the petitioners "were obscure on th[e] issue in their opening brief" and only "warmed to the . . . issue" in their reply brief). Moreover, we note that the Zei Club's own proposed jury instruction on substantial special use did not contain a definition of the term. *See* J.A. 1191.