# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 3, 2017   Decided January 26, 2018

No. 16-7124

PAUL D. CASEY, INDIVIDUALLY AND AS ADMINISTRATOR OF
THE ESTATE OF PATRICK D. CASEY, AND ABIGAIL O. CASEY,
APPELLANTS

v.

MCDONALD'S CORPORATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01452)

*Brendan J. Klaproth* argued the cause and filed the briefs
for appellants.

*Joseph J. Bottiglieri* argued the cause for appellees
McDonald's Corporation, Inc., et al. *D. Stephenson Schwinn*
argued the cause for appellee RAH of Washington, D.C., Inc.
With them on the brief were *Andrew Butz*, *Michael L. Pivor*,
and *Dominic G. Vorv*.

Before: ROGERS, KAVANAUGH, and WILKINS, *Circuit
Judges*.

2

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

Concurring opinion filed by *Circuit Judge* WILKINS.

KAVANAUGH, *Circuit Judge*: This case arose out of a drunken brawl, a not-uncommon occurrence late at night outside of D.C. bars. But this fight had an uncommon and tragic ending: someone died.

The parents of the victim sued under D.C. tort law and named a variety of defendants, including as relevant here: (i) two bars that served alcohol to the assailant even after he allegedly was already visibly intoxicated; and (ii) the fast-food restaurant (McDonald's) where the altercation began. The District Court dismissed the claims against the bars and granted summary judgment to McDonald's.

Based on D.C. precedent, we conclude that the allegations, if true, state a claim against the bars under D.C. law. We therefore reverse the District Court's dismissal of the Caseys' claims against the two bars. We conclude that the claims against McDonald's are unavailing as a matter of law. We therefore affirm the District Court's grant of summary judgment to McDonald's. We remand for further proceedings consistent with this opinion.

I

The McDonald's fast-food restaurant at 19th and M Streets, N.W., in Washington, D.C., is open 24 hours a day. Like many fast-food restaurants and diners, that McDonald's serves an influx of sometimes drunk customers on Friday and Saturday nights.

After a Friday night of bar hopping in September 2011, two groups of men began exchanging words with each other at the M Street McDonald's. Jason Ward was in one group, and Patrick Casey was in the other. The men eventually ended up just outside the restaurant, on the sidewalk. At that point, Jason Ward punched Patrick Casey. Casey fell to the ground and hit his head on the sidewalk. Casey was taken to a local hospital.

Four days after the fight, while still in the hospital, Casey died.

Patrick Casey's parents sued. They brought D.C. tort claims against Ward and two of his friends who were part of the fight at McDonald's; against several bars that served Ward and his friends on the night of the fight; and against Kyung Rhee (the owner of the M Street McDonald's) and the McDonald's Corporation.

At this point, the only remaining defendants are: (i) two bars, Ozio and Camelot, and (ii) Kyung Rhee and the McDonald's Corporation, whom we will refer to collectively as McDonald's.

As to the two bars, the Caseys argue that the bars violated D.C. Code § 25-781 and therefore were negligent per se. That provision of D.C. law prohibits serving alcohol to already intoxicated persons. The Caseys allege that the bars served Ward and his friends even though the men were already visibly intoxicated. The Caseys further allege that the bars' negligence caused Patrick Casey's death. The District Court dismissed the tort claims against the bars on the ground that the plaintiffs did not plead sufficient facts to establish proximate cause under D.C. law.

As to McDonald's, the Caseys contend that the restaurant should have done more to protect customers from other customers who were drunk and unruly. In the District Court, the Caseys' claims against McDonald's survived motions to dismiss and proceeded to discovery. The District Court later granted summary judgment to McDonald's on the ground that the evidence was insufficient to show that McDonald's acted negligently.

Because this is a diversity jurisdiction case and is governed by D.C. law, our task "is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case." *Novak v. Capital Management and Development Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006). We review the decision of the District Court de novo.

## II

We first address the claims against the two bars.

To recover in a negligence action, a plaintiff in D.C. must establish three elements: "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Convit v. Wilson*, 980 A.2d 1104, 1123 (D.C. 2009).

Here, D.C. statutory law establishes the standard of care for bars: Bars may not serve alcoholic beverages to an "intoxicated person, or any person who appears to be intoxicated." D.C. Code § 25-781. A violation of that law "constitutes negligence *per se*." *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1275 (D.C. 1987).

The Caseys contend that the bars deviated from that standard by serving Ward when the bars knew that Ward was

already intoxicated. In particular, the Caseys allege that the bars "served and continued to serve alcoholic beverages to" Ward and his friends while the three men "all visibly appeared to be intoxicated, and were in fact intoxicated." Complaint ¶ 24. The Caseys further allege that an employee of one of the bars (Ozio) stated that the three men "were already 'drunk' when they arrived" at the bar. Complaint ¶ 28.

On a motion to dismiss, we must assume that the allegations of the complaint are true. Taking the allegations as true, we must assume that the bars served Ward when the bars knew that Ward was already intoxicated.

To recover from the bars, the Caseys must also show that the bars' actions caused Patrick Casey's death. To establish causation under D.C. tort law, the plaintiffs must show both but-for causation and proximate cause.

Here, the parties dispute the applicability of the foreseeability prong of the proximate cause analysis: whether the bars could reasonably foresee that over-serving Ward and his friends when they were already visibly intoxicated could cause harm to others after the men left the bar.

A trio of D.C.-law cases have already addressed that kind of scenario. Those cases control our analysis.

In *Rong Yao Zhou*, two persons were seriously injured in a car accident caused by a drunk driver named Joray. Earlier in the evening, Joray had been served alcohol at a restaurant. The injured parties sued the restaurant, alleging that the restaurant had served alcohol to Joray even after Joray was already visibly intoxicated. The D.C. Court of Appeals ruled that those allegations stated a claim against the restaurant under D.C. tort law. As to proximate cause, the court said that

plaintiffs must simply show the injury's "proximity in time, place and circumstances" to the restaurant's serving of alcohol to the visibly intoxicated patron. *Rong Yao Zhou*, 534 A.2d at 1277 (internal quotation omitted). The court concluded that the allegations in the complaint met that standard.

In so ruling, the D.C. Court of Appeals expressly agreed with this Court's prior decision applying D.C. tort law in *Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Cir. 1973). In *Marusa*, a police officer was very drunk at a bar and, immediately after leaving, shot someone with his service revolver. The injured victim sued the bar, alleging that the bar had served the officer even after he was visibly drunk. The Court held that those allegations stated a claim against the bar under D.C. law. The Court ruled that the bar could be liable for serving a customer when the bar knew that the customer was already drunk.

In a more recent D.C. Court of Appeals case, an underage man left a bar and was killed when he walked into traffic. The man's parents sued the bar, alleging that the bar had served the man even after he was visibly intoxicated. Although that case did not involve an injury to a third party, the court concluded that the same basic tort-law principle applied: A bar may be liable when it serves alcohol to a customer who is visibly intoxicated and the customer then injures himself or herself, or others. The court ruled that the facts stated a claim against the bar under D.C. tort law. *See Jarrett v. Woodward Brothers, Inc.*, 751 A.2d 972 (D.C. 2000).[1]

---

[1] Ordinarily, D.C. tort law requires a heightened showing of foreseeability when an intervening criminal act causes the plaintiff's injury. *See District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 641 (D.C. 2005). But as then-Judge Scalia explained, that doctrine does not apply under D.C. tort law when a bar or similar establishment serves alcohol to a visibly intoxicated customer. In those circumstances, as a matter of D.C.

The Caseys alleged that the bars served alcohol to the visibly intoxicated Ward in the hours before and a few blocks away from where Ward assaulted Patrick Casey. Under the precedents, the facts alleged by the Caseys state a claim under D.C. tort law. The claims against the two bars therefore survive a motion to dismiss and may proceed.[2]

III

Next, we consider the Caseys' claims against McDonald's. On the McDonald's motion for summary judgment, we take the facts in the light most favorable to the Caseys. The Caseys argue in essence that McDonald's had a general duty to protect its patrons from harm caused by other patrons. In particular, the Caseys contend that McDonald's acted negligently in three ways: McDonald's failed to have a security guard on duty, no McDonald's employee called 911 during the fight, and McDonald's failed to properly train its employees to prevent or break up the fight.

*First*, the Caseys argue that McDonald's should have had a security guard on duty. Under D.C. law, a tort-law plaintiff in a negligence case must show that the defendant violated a national standard of care. *See Robinson v. Washington Metropolitan Area Transit Authority*, 774 F.3d 33, 39 (D.C. Cir. 2014); *Novak v. Capital Management and Development Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009); *Briggs v.*

---

public policy, the bar may be liable for injuries caused by the drunk patron after he or she leaves the bar. *See Romero v. National Rifle Association of America, Inc.*, 749 F.2d 77, 83 (D.C. Cir. 1984).

[2] At this stage, we do not address whether the plaintiffs must show that the bars *knew* – or merely should have known – that Ward was intoxicated when he was served. We also do not address what level of visible impairment suffices to put bars on notice that they must stop serving alcohol to someone. Those questions of D.C. law are not before us.

*Washington Metropolitan Area Transit Authority*, 481 F.3d 839, 846-47 (D.C. Cir. 2007); *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997). A "national standard of care must describe a specific standard" that has been "accepted in the industry." *Novak*, 570 F.3d at 313. In *Novak*, this Court concluded that a nightclub "violated a national standard" of care when it did not follow a standard that was "widespread" and was also the "normal practice" of nightclubs in the District of Columbia. *Id.*[3]

The Caseys' expert failed to identify a specific national standard of care that required McDonald's to have a security guard on duty. The Caseys' expert noted that security guards can help to maintain a safe environment, deter unsafe behavior, and intervene in fights. That is no doubt true, but that truism alone does not establish a national standard of care for tort cases. The expert also cited McDonald's own security manual and claimed that the manual required a security guard. But the McDonald's security manual states that its suggested policies are merely advisory. Furthermore, applying D.C. law, we have stated that internal manuals may not, "on their own, establish the national standard." *Robinson*, 774 F.3d at 39. The Caseys' expert further pointed to local McDonald's restaurants that have hired security guards. But the fact that a few local McDonald's restaurants decided to hire security guards is not evidence that the practice is sufficiently widespread to establish a national standard of care for fast-food restaurants. The Caseys say that their motion to compel further evidence should have been granted. But the evidence that they sought related only to a few other local McDonald's restaurants and thus still

---

[3] The cases applying the national standard of care requirement employ a variety of formulations describing how a plaintiff may establish the requisite standard of care. In this opinion, we do not purport to alter or affect pre-existing law on that question. Under any formulation of the requirement, the Caseys' expert testimony fell far short.

could not establish a national standard of care for fast-food restaurants.

*Second*, the Caseys allege that McDonald's employees should have called 911 at some point during the altercation. But again, the expert relied only on McDonald's own policy. That policy alone does not establish a national standard of care. It also bears mention that the physical altercation did not escalate until the men were outside of the McDonald's on the sidewalk.

*Third*, the Caseys allege that McDonald's failed to properly train its employees on how to handle drunk and unruly patrons, and to stop these kinds of altercations. That argument fails because the Caseys have not provided any evidence suggesting a national standard of care that requires fast-food restaurant employees to break up or prevent fights between drunk patrons (potentially endangering the employees' own lives by doing so).

We have considered all of the plaintiffs' arguments against McDonald's (against the corporation and against the owner of the McDonald's at 19th and M). McDonald's was entitled to summary judgment, as the District Court concluded.

IV

One final bit of housekeeping. When, as here, a defendant's allegedly negligent conduct results in death, plaintiffs in D.C. may pursue two independent claims: wrongful death claims and survival claims. *See Strother v. District of Columbia*, 372 A.2d 1291, 1295 (D.C. 1977). In a wrongful death action, the next of kin of the decedent may recover pecuniary losses resulting from the death of the loved one. *See* D.C. Code §§ 16-2701, 2702. In a survival action, a

representative of the decedent may bring a tort cause of action that the decedent could have pursued if he or she had survived. *See* D.C. Code § 12-101.

Under our ruling so far, the Caseys may pursue both their wrongful death and survival claims against the bars. The District Court held, however, that the wrongful death claims were filed too late and were outside the statute of limitations. We disagree.

The Caseys' claims accrued on September 27, 2011, when Patrick Casey died. *See Estate of Chapelle v. Sanders*, 442 A.2d 157, 158 (D.C. 1982). The D.C. Wrongful Death Act that was in force when Casey died required plaintiffs to file wrongful death claims within one year of the decedent's death. *See* D.C. Code § 16-2702 (1981). The Caseys did not file until September 23, 2013, almost two years after the incident.

The Caseys presumably waited that long to file because, on March 30, 2012, the D.C. Council enacted the Wrongful Death Emergency Act, which extended "the time period that a plaintiff has to bring a claim against a defendant in a wrongful death suit from one year to 2 years." D.C. Act 19-338, 59 D.C. Reg. 2567 (enacted Mar. 30, 2012).

In this case, however, the District Court ruled that the new D.C. statute of limitations did not apply to the Caseys' wrongful death claims. The District Court reasoned that the new statute of limitations did not apply to torts that occurred *before* the date of enactment of the new law. In so concluding, the District Court relied on U.S. Supreme Court precedent establishing a presumption against retroactivity of federal statutes. In general, courts presume that a law does not apply retroactively unless it is sufficiently clear that the legislature intended to give the statute retroactive effect. *See Landgraf v.*

*USI Film Products*, 511 U.S. 244, 272-73 (1994). The parties here assume that the D.C. law of statutory interpretation mirrors federal law with respect to the presumption against retroactivity. We accept that assumption for purposes of this case.

The D.C. Wrongful Death Emergency Act overcomes the presumption against retroactivity. The D.C. Council made the change to the statute of limitations so that the new two-year statute of limitations would apply to acts that occurred before the date of enactment. We know as much because on March 20, 2012, before passing the Emergency Act, the D.C. Council passed a Resolution, which declared "the existence of an emergency" and a "need to amend" the Wrongful Death Act. D.C. Resolution 19-405, 59 D.C. Reg. 2410 (enacted Mar. 20, 2012). The emergency was that the one-year statute of limitations had already run for families of the victims of the South Capitol Street shootings. *Id*. The D.C. Council extended the statute of limitations precisely so that those claims would not be barred by the one-year statute of limitations. In other words, the D.C. Council enacted the Wrongful Death Emergency Act with the express intent that a two-year statute of limitations would apply retroactively to torts that occurred *before* the date of enactment.

Under D.C. law, the Caseys therefore had until September 27, 2013 – two years after Patrick Casey's death – to file their wrongful death claims. They met that deadline by filing their suit on September 23, 2013. The Caseys' wrongful death claims are timely.

\* \* \*

We reverse the District Court's dismissal of the Caseys' claims against the two bars. We affirm the District Court's

grant of summary judgment to McDonald's.  We remand for further proceedings consistent with this opinion.

*So ordered.*

WILKINS, *Circuit Judge*, concurring: I concur with the Court's decision in full. I write separately to point out the District Court appeared to believe that the requisite standard of care could not be established with expert testimony regarding local, comparable facilities, because the plaintiff must proffer evidence of practices "across the *nation*." *See Casey v. Ward*, 211 F. Supp. 3d 107, 116 (D.D.C. 2016) (emphasis in original)) (citing *Beckwith v. Interstate Mgmt. Corp., LLC*, 82 F. Supp. 3d 255, 263-64 (D.D.C. 2015) (expert testimony of security practices of several hotels in Baltimore and Washington, D.C., areas "cannot be the basis of a 'nationally recognized' standard of care")). Because the evidence in this case was inadequate for several reasons, we have no need to reach the question, but I note that the evidentiary burden may not always require evidence from around the nation, as expressed by the District Court. *See Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009) (plaintiff's expert could opine that the standard of care required a nightclub to have a security guard posted outside at closing time, where he testified that four D.C. nightclubs followed that practice, and a former manager of the defendant club "was unable to name a single professionally run nightclub in the District that does not position security personnel outside"); *Bell v. Jones*, 523 A.2d 982, 988 (D.C. 1986) (notwithstanding the requirement of a "national standard of care" for surveyors, finding no error in admitting expert testimony where "there was no evidence that the standard of care in the District was different in any respect from that which might be applicable nationwide" and where "all of the pertinent events in this case occurred in the District of Columbia").