# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 12, 2021        Decided May 28, 2021

No. 20-1247

UNION OF CONCERNED SCIENTISTS,
PETITIONER

v.

UNITED STATES DEPARTMENT OF ENERGY,
RESPONDENT

On Petition for Review of an Order
of the Department of Energy

*David C. Bender* argued the cause for petitioner. On the briefs were *Kim Smaczniak* and *Charles Carter Hall*.

*Sarah Carroll*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, and *Michael S. Raab*, Attorney.

*Delia D. Patterson*, *John E. McCaffrey*, *Robert Stroh*, *Jonathan D. Schneider*, and *Nicholas J. Pascale* were on the brief for *amici curiae* American Public Power Association, et al. in support of respondent.

Before: ROGERS and KATSAS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Union of Concerned Scientists petitions for review of a Department of Energy rule concerning the designation of "critical electric infrastructure information," 16 U.S.C. § 824o-1(a)(3). The Union contends that the rule exceeds the Department's authority under section 215A of the Federal Power Act, is arbitrary and capricious, and was promulgated in violation of the notice and comment requirements of the Administrative Procedure Act. Because the Union has not shown that it has standing under Article III of the Constitution to bring this facial challenge, the court lacks jurisdiction and must dismiss the petition.

**I.**

In 2015, Congress amended the Federal Power Act to add section 215A, authorizing the Federal Energy Regulatory Commission ("FERC") and the Secretary of Energy ("DOE") to designate information as critical electric infrastructure information ("CEII"). *See* Fixing America's Surface Transportation Act (the "FAST Act"), Pub. L. No. 114-94, § 61003, 129 Stat. 1312, 1773–79 (2015) (codified at 16 U.S.C. § 824o-1). Section 215A defines CEII as "information related to critical electric infrastructure, or proposed critical electrical infrastructure, generated by or provided to the [FERC] or other Federal agency, other than classified national security information, that is designated as [CEII]" by FERC or DOE. 16 U.S.C. § 824o-1(a)(3). In turn, "critical electric infrastructure" is defined as "a system or asset of the bulk-power system, whether physical or virtual, the incapacity or destruction of which would negatively affect national security, economic security, public health or safety, or any combination of such matters." *Id.* § 824o-1(a)(2). CEII is exempt from disclosure under the Freedom of Information Act ("FOIA") and

is not to be "made available by any Federal, State, political subdivision or tribal authority pursuant to any Federal, State, political subdivision or tribal law requiring public disclosure of information or records." *Id.* § 824o-1(d)(1).

Section 215A directed that FERC, "after consultation with" the Secretary of Energy, "promulgate such regulations as necessary to . . . establish criteria and procedures to designate information as" CEII; prohibit its unauthorized disclosure; ensure appropriate sanctions are in place for FERC and Department of Energy (also "DOE") personnel and agents who make unauthorized disclosures; and "facilitate voluntary sharing of [CEII] with, between, and by" several specific categories of entities, as well as "other entities determined appropriate by the [FERC]." *Id.* § 824o-1(d)(2). On December 21, 2016, FERC promulgated the necessary regulations. *See* Regulations Implementing FAST Act Section 61003 — Critical Electric Infrastructure Security & Amending Critical Energy Infrastructure Information; Availability of Certain North American Electric Reliability Corporation Databases ("CEII 2016 Rule"), 157 FERC ¶ 61,123, 81 Fed. Reg. 93,732 (Dec. 21, 2016) (codified as relevant at 18 C.F.R. § 388.113).

Section 215A also authorizes DOE to designate information as CEII, providing that "[i]nformation may be designated by the [FERC] or [DOE] as [CEII] pursuant to the criteria and procedures established by the [FERC.]" 16 U.S.C. § 824o-1(d)(3). On October 29, 2018, DOE published a notice of proposed rulemaking on new CEII administrative procedures. *See* 83 Fed. Reg. 54,268 (proposed Oct. 29, 2018). Interpreting the CEII 2016 Rule's designation procedures as applicable only to FERC, DOE proposed its own designation procedures, *id.* at 54,269, as well as procedures for non-federal entities to request access to CEII held by DOE, *id.* at 54,270–71. On March 16, 2020, DOE issued the Critical Electric

Infrastructure Information; New Administrative Procedures ("CEII 2020 Rule"), 85 Fed. Reg. 14,756 (Mar. 16, 2020) (codified at 10 C.F.R. § 1004.13). Repeating that it "follows the designation criteria FERC has already formulated, but establishes its own procedures for such designation," DOE described any differences in procedures as largely inconsequential and "consistent with FERC's rule to the maximum extent possible[.]" *Id.* at 14,757.

## II.

The Union is a national nonprofit organization consisting of scientists, engineers, analysts, and policy and communication experts who conduct "independent analyses" that the Union uses "to develop and test proposed policies, to educate the public and decision-makers, and to advocate for evidence-based solutions." Pet'r's Br. 31. Together with Public Citizen, the Union unsuccessfully petitioned DOE for rehearing of the CEII 2020 Rule, and it now petitions for judicial review. The Union contends that DOE exceeded its authority under section 215A by promulgating different criteria and procedures for CEII designation than those in the CEII 2016 Rule. It also contends that DOE's rule is arbitrary and capricious because it (1) conflicts with DOE's obligations under FOIA and the Federal Records Act; (2) risks violation of the due process rights of parties in proceedings before DOE; and (3) contains overly broad CEII designation criteria and excessively restrictive limits on access to CEII by non-federal entities. Further, the Union contends that DOE violated the notice and comment requirements of the Administrative Procedure Act. DOE responds that the Union lacks standing to bring this challenge because there is no indication that DOE's rule would deprive the Union or its members of information they would receive if DOE were to apply the CEII 2016 Rule promulgated by FERC.

As a threshold matter, the court must determine whether it has jurisdiction to consider this facial challenge to the CEII 2020 Rule. The Union maintains that it has Article III standing because it will be denied access to information under DOE's rule that it could obtain under FERC's rule, namely both information designated as CEII by DOE and non-CEII that the Union would seek from DOE under FOIA. In its reply brief, the Union also claims for the first time a future drain on its resources because it "will have to spend additional person-hours to meet the demands of [DOE]'s more burdensome procedures[.]" Reply Br. 10. For the following reasons, we hold that the Union's first asserted injury, which is an informational injury, is speculative and that its second asserted injury is forfeited.

"To establish Article III standing, a petitioner must demonstrate it has suffered a concrete and particularized injury that is imminent and not conjectural, that was caused by the challenged action, and that is likely to be redressed by a favorable judicial decision." *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The Union's informational injury is a possible future injury and therefore implicates the imminence requirement. *Cf. Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015). Although it is "a somewhat elastic concept," imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). Consequently, a threatened injury must be "certainly impending" or there has to be a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted) (citing *Clapper*, 568 U.S. at 414 n.5).

Here, the Union is concerned about future access to two kinds of information: CEII held by DOE and information that DOE will decide should *not* be designated as CEII and that would therefore be subject to FOIA. Declarations in the addendum to its opening brief reflect that the Union regularly seeks and relies on the availability of both kinds of information from DOE. *See, e.g.*, Decl. of Steve Clemmer, Director of Energy Research and Analysis, Climate and Energy Program ¶¶ 7–8, 10–11, 13–14; Decl. of Sam Gomberg, Senior Analyst, Climate and Energy Program ¶¶ 7–8. And the Union intends to continue seeking these kinds of information from DOE in the future. *See, e.g.*, Clemmer Decl. ¶¶ 11, 13–14; Decl. of Michael Jacobs, Senior Energy Analyst, Climate and Energy Program ¶¶ 8–9.

As to CEII held by DOE, the Union contends its access will be impaired because, compared to FERC's rule, DOE's rule contains broader criteria for CEII designation and more restrictions on CEII access. In terms of designation criteria, the Union points out that even though DOE changed course between its proposed and final rules on the "pre-designation" of certain categories of information as CEII, the preamble to DOE's rule provides that in determining whether information qualifies as CEII, DOE still plans to consider whether the information falls into one or more of those categories, namely: "[1] Defense Critical Electric Infrastructure; [2] information on electric incidents and emergencies reported to DOE through the Electric Emergency Incident and Disturbance Report (Form OE-417); and/or [3] Federal spectrum information managed by the National Telecommunications and Information Administration (NTIA)." CEII 2020 Rule, 85 Fed. Reg. at 14,762. And the preamble, the Union explains, serves as "evidence of [DOE's] contemporaneous understanding of its" rule, *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999), and "is informative with respect to how

[DOE] intended to determine" whether information should be designated as CEII, *Howmet Corp. v. EPA*, 614 F.3d 544, 550–51 (D.C. Cir. 2010).

Turning to access restrictions, the Union highlights two aspects of DOE's rule that it has concluded will result in reduced access to CEII. First, unlike FERC's rule, DOE's rule does not include designated procedures for access to CEII by participants in proceedings before DOE. Second, DOE's rule requires that CEII-requesting non-federal entities "demonstrate[] that the release of [CEII] is in the national security interest," or their requests "shall not be entertained." 10 C.F.R. § 1004.13(j)(2). FERC's rule does not similarly burden requesters. Once a requester demonstrates a legitimate need for the CEII, FERC is to balance the need for the information against its "sensitivity," without requiring the requester to demonstrate that releasing the information would serve some sort of interest. *See* 18 C.F.R. § 388.113(g)(5)(iii).

DOE responds that it adopted the same CEII designation criteria as FERC and sufficiently similar access procedures and therefore "there is no indication that the rule will cause [DOE] to withhold information" that the Union would receive if DOE were instead to apply FERC's regulations. Resp't's Br. 21. At this stage, the court must assume the validity of the Union's interpretation of DOE's rule. *See Del. Dep't of Nat. Res. & Env't Control v. EPA*, 785 F.3d 1, 7 (D.C. Cir. 2015). That means the court may not now "pronounce upon the meaning" of DOE's rule, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998), which, in essence, is what DOE invites. But DOE also maintains, appropriately at this stage, that the Union's first claimed injury is too speculative for Article III purposes, "describing harms [the Union] might suffer *if* [DOE] someday denied access to information." Resp't's Br. 24.

Assuming that DOE's rule is more restrictive than FERC's in the ways the Union describes, the Union is less likely to be granted access to DOE CEII in the future. Take, for instance, a request for Form OE-417 data, on which the Union relies for its research and analysis. *See, e.g.*, Clemmer Decl. ¶¶ 11, 13–14; Jacobs Decl. ¶ 9. Setting two identical requests for Form OE-417 data against one another — one pre-DOE rule and one post — a request under DOE's rule is more likely to be denied. Concluding as much does not require the court to rely on a "speculative chain of possibilities" that would defeat standing. *See Clapper*, 568 U.S. at 414. And, contrary to DOE's assertions, absolute certainty is not required; it is enough that the increased risk of harm is substantial. *See id.* at 414 n.5; *Susan B. Anthony*, 573 U.S. at 158; *N.Y. Republican State Comm. v. SEC*, 927 F.3d 499, 504–05 (D.C. Cir. 2019). DOE's attempt to evoke conjecture by challenging the Union's reading of the rule and then citing conditional statements from the Union's supporting declarations, *see* Resp't's Br. 24 & n.5, is therefore unpersuasive.

Yet, in making designation and access decisions, DOE exercises discretion. *See, e.g.*, 10 C.F.R. §§ 1004.13(g)(5)(i), (g)(6)(i), (j)(2), (k)(4). And this court has been reluctant to find standing based on predictions of how agencies will exercise discretion in future proceedings, stating, for instance, that "[i]t is premature for a court to consider the legality of how the Government *might* wield the orderly liquidation authority in a *potential* future proceeding," *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 56 (D.C. Cir. 2015). Here the discretion DOE has in making designation and access decisions takes the denial of access to CEII from the decidedly likely to the speculative.

The Union's non-CEII theory fares no better. The Union contends that DOE would indirectly withhold public

information from it as a result of DOE's "commitment to return and destroy information not designated as [CEII] rather than produce that information in response to a FOIA request." Pet'r's Br. 33 (emphasis removed). DOE questions the logic of the Union's argument, explaining that DOE must "return or destroy non-CEII *consistent with* the Federal Records Act, and DOE handling of agency records in accordance with DOE Order O.243.1A, Records Management Program, and related requirements and responsibilities . . . in accordance with law and regulatory requirements," 10 C.F.R. § 1004.13(g)(6)(iii) (emphasis added). In DOE's view, therefore, the Union's non-CEII injury theory also rests on speculation.

To be denied access to non-CEII under this theory, (1) the Union would need to submit a FOIA request (2) that happens to concern information DOE will have already determined was non-CEII and (3) does not fall under a FOIA exemption, and (4) DOE would need to have determined that returning or destroying that information comports with its various record-keeping policies and requirements. *Cf. Clapper*, 568 U.S. at 410. What is more, to produce the injurious scenario of which the Union warns, these moving pieces would have to come together at the same time. That is indeed a hypothetical chain of events on which standing cannot rest. *New York Reg'l Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011).

As for the Union's asserted injury resulting from a future resource drain, it is forfeited because the Union raised it for the first time in its reply brief. *See Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019); *Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019). The Union suggests that this theory is a mere corollary of its position that DOE's rule imposes more restrictive procedures on requesters than FERC's rule. *See* Oral Arg. Recording at 40:18–41:15. Yet

any drain on the Union's resources resulting from some aspect of DOE's rule is not obvious, much less the specific drain that the Union identifies on reply. At best, the Union was "'obscure on the issue in [its] opening brief and only warmed to the issue in [its] reply brief.'" *Twin Rivers*, 934 F.3d at 615 (quoting *Novak v. Cap. Mgmt. & Dev. Corp.*, 570 F.3d 305, 316 n.5 (D.C. Cir. 2009)). That still results in forfeiture. *Id.*

Accordingly, because the Union has not satisfied the injury requirement of Article III standing, the petition is dismissed for lack of jurisdiction.