946 F.2d 127
 292 U.S.App.D.C. 37
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
William I. JOHNSON, Appellant,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.
 No. 90-7029.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 21, 1991.
 
 Before HARRY T. EDWARDS, STEPHEN F. WILLIAMS and RANDOLPH, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir. Rule 14(c). For the reasons stated in the accompanying memorandum it is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the District Court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 This is an appeal from the district court's judgment for the Washington Metropolitan Area Transit Authority ("WMATA") notwithstanding a verdict in favor of William I. Johnson, who sued WMATA claiming that an injury to his knee, sustained while he was a passenger on a WMATA bus on Christmas Day, 1987, was caused by the negligence of the WMATA employee driving the bus.
 
 I.
 
 5
 Johnson testified that after entering the bus and walking a short way down the aisle, the bus stopped suddenly, causing him to fall. He did not know why the bus stopped and could not remember anything that happened immediately after his fall. Another passenger, Patricia Overton, testified that she recalled watching Johnson walk down the aisle, that the bus "jerked," and that she had to catch herself on the rail of the seat in front of her. She said that others were also propelled forward, and that she saw Johnson fall to the floor when the bus stopped. According to Overton, the driver had been turning his head to talk to a passenger; she thought he was talking just before she felt the jerk.
 
 
 6
 An orthopedic surgeon, Dr. Jeffrey Goltz, testified that he first examined Johnson on October 26, 1988, ten months after his fall on the bus. Dr. Goltz diagnosed Johnson's injury as a ruptured quadriceps tendon, caused by contracting his muscles to keep the knee from collapsing. In his opinion, Johnson could not have been unconscious at the time of the rupture.
 
 
 7
 The court denied WMATA's motion for a directed verdict at the close of Johnson's case. WMATA then put on its defense. The bus driver testified that he did not stop the bus before Johnson fell. The driver and two other witnesses--a WMATA Street Supervisor and a Metro transit police officer--testified that, after the fall, Johnson said he had fainted. An emergency room nurse at the hospital to which Johnson was taken testified that Johnson told her the bus had not been moving and that he did not know why he had fallen. At the close of its case, WMATA again moved for a directed verdict, which the court denied.
 
 
 8
 The jury returned a verdict in favor of Johnson and awarded him $106,369.04. WMATA then moved, pursuant to Rule 50(b), Fed.R.Civ.P., for judgment notwithstanding the verdict. The court granted the motion on the basis that Johnson had not presented sufficient evidence to make out a prima facie case of negligence. The court pointed out that mere evidence of a jerk of the bus and resulting injuries is usually insufficient to give rise to an inference of negligence. See Boyko v. WMATA, 468 A.2d 582, 584 (D.C.1982). Looking at the evidence in the light most favorable to Johnson, the court decided that the jerk described by Johnson and Overton was not of such extraordinary force that a reasonable jury could infer negligence from that fact. In addition, the court found that Dr. Goltz's testimony about the nature of the injury was entirely consistent with careful operation of the bus. As for direct evidence of negligence, the court held that Overton had not testified "as to how the bus driver's conversation with a passenger had caused the bus to jerk." Johnson v. WMATA, Civ. No. 88-1399, mem. order at 4 (D.D.C. Feb. 16, 1990).
 
 II
 
 9
 We must affirm a judgment notwithstanding the verdict if, after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences, it is clear that a reasonable jury could only have found for the moving party. Siegel v. Mazda Motor Corp., 878 F.2d 435, 437 (D.C.Cir.1989). The question here is whether Johnson ever presented enough evidence to make out a prima facie case of negligence. Because "jerks" occur often in the normal operation of a bus, evidence of a jerk that resulted in injury is not usually enough for a jury to infer negligence. If it were, WMATA could be held liable for many common accidents that are no fault of the driver. Therefore, under District of Columbia law plaintiffs must offer additional evidence to establish the negligence of the driver, unless the jerk was so violent or extraordinary that it could not have been consistent with safe operation of the bus. Boyko, 468 A.2d at 584; Fells v. WMATA, 357 A.2d 395, 395-96 (D.C.1976). We agree with the district court that Johnson's evidence did not satisfy this standard.
 
 
 10
 As to the severity of the jerk, Overton testified on direct examination that the bus stopped and Johnson fell. On cross examination, however, she admitted that the bus did not come to a complete stop, but instead just jerked and continued moving. At another point, Overton described the stop as "violent," but she immediately backed off that characterization and said the jerk "wasn't normal." On cross examination, she said that the jerk would have knocked over anyone else standing in the aisle. On direct she thought there had been a few other people standing in the aisle; on cross she could not remember if anyone else had been standing. The bus driver later testified that about eighteen people had been standing in the aisle.
 
 
 11
 Likewise, Johnson testified on direct that the bus made a "sudden full stop," but on cross he admitted that the bus had started up only "a little bit" and had only gone "a little ways" before it made the sudden stop. Johnson's characterization of the jerk was further discredited when he admitted that, in his complaint and in answer to interrogatories, he had claimed that the bus had started suddenly and jerked forward, rather than stopping suddenly. The qualifications and inconsistencies in both Overton's and Johnson's testimony leave no doubt that the jerk of the bus could not have been an extraordinary occurrence. See Wiggins v. Capital Transit Co., 122 A.2d 117, 118-19 (D.C.1956). The district court did not err in concluding that Overton and Johnson had not described a jerk of sufficient magnitude to warrant a jury's inference of negligence.
 
 
 12
 Furthermore, Dr. Goltz's testimony failed to establish a prima facie case of negligence. In some cases a doctor's testimony about the severity of the motion necessary to cause an injury, coupled with evidence of a jerk of the bus, can be sufficient for a jury to infer negligence. Boyko, 468 A.2d at 585; Wiggins, 122 A.2d at 119. In Boyko, the court held that plaintiff had made out a prima facie case when her doctor testified that it would have taken a considerable amount of "violence" in the jerk of the bus to cause plaintiff's injury. Boyko, 468 A.2d at 585. In contrast, here Johnson's doctor merely testified that his injury was the result of his contracting his muscles in an attempt to maintain his balance. Dr. Goltz did not testify that the injury could only have been caused by a violent motion of the bus. Indeed, Dr. Goltz admitted that a ruptured quadriceps tendon in people more than forty years old commonly happens in connection with an ordinary fall or loss of balance, such as tripping on the stairs. Therefore, a reasonable jury had to conclude that Johnson's injury was consistent with normal operation of the bus.
 
 
 13
 Johnson also sought to present direct evidence of the driver's negligence, but this evidence fell short. Overton testified that the driver had been turning his head to talk to a passenger before Johnson boarded the bus. She testified that she thought there was "still conversation" immediately before she felt the jerk of the bus. The district court correctly pointed out, however, that Overton had not told the jury how this conduct negligently caused Johnson's injury. Again, Boyko is distinguishable. There, the driver testified that when she pulled away from the bus stop, she knew that she would have to stop immediately for a nearby traffic light and that plaintiff was still standing on a wet floor. Boyko, 468 A.2d at 583. In contrast, here no reasonable jury could have found that the driver was negligent based only on Overton's speculation that the driver was talking to a passenger and her further assumption that the conversation resulted in the sudden stop. In fact, no evidence was presented to show why the stop occurred, and Overton admitted that she did not know why the bus stopped. Drivers often must stop buses quickly to avoid collisions, and such stops are necessary for the safety of the passengers. Without specifying how the driver's conduct negligently caused the stop, a reasonable jury would have to conclude that the stop was equally consistent with the safe operation of the bus.
 
 
 14
 Because Johnson never succeeded in putting forward a prima facie case of negligence against WMATA, we hold that the district court was correct to set aside the verdict.
 
 
 15
 Affirmed.