# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 25-7044            **September Term, 2025**

FILED ON: MARCH 31, 2026

REBECCA MONTGOMERY,
           APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
           APPELLEE

On Appeal from the United States
District Court for the District of Columbia
(No. 1:23-cv-463)

Before: KATSAS, WALKER, and PAN, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on March 7, 2025, granting appellee's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, be **AFFIRMED**.

\*     \*     \*

Appellant Rebecca Montgomery filed this negligence suit against Appellee Washington Metropolitan Area Transit Authority (WMATA), alleging that a Metro train on which Montgomery was a passenger lurched forward without warning, causing her to fall and injure herself. The district court entered summary judgment in favor of WMATA because Montgomery failed to adduce expert testimony to establish the national standard of care that WMATA allegedly breached. Discerning no error, we affirm.

**I.**

In November 2019, Montgomery boarded a Metro train operated by WMATA. A loose bulkhead door near Montgomery's seat repeatedly bumped into her leg. When the train entered the Farragut North Metro Station and came to a full stop, Montgomery rose to change seats. Then, "suddenly and without warning, the train started and then came to an abrupt stop, causing a jerking motion." Opening Br. 4 (cleaned up). "The abrupt motion of the train caused Ms. Montgomery to fall and slide to the other side of the train car," resulting in an acute femoral neck fracture (*i.e.*, a broken hip). *Id.* at 4, 6. Montgomery received a left-hip cemented hemiarthroplasty (*i.e.*, a partial hip replacement), underwent physical therapy, and "continues to suffer from pain and uses a rolling walker for mobility aid." *Id.* at 6.

Montgomery sued WMATA, alleging negligence. After the close of discovery, WMATA moved for summary judgment, asserting that there was insufficient evidence to prove the applicable standard of care. The district court agreed and granted the motion. The district court reasoned that expert testimony was necessary to establish the national standard of care for train operators, but Montgomery had failed to offer any such evidence. Without expert testimony, Montgomery could not prove that it was negligent for WMATA to fail to warn passengers before "adjusting . . . the train on the platform." *Montgomery v. WMATA*, No. 23-cv-463, 2025 WL 740806, at *3 (D.D.C. Mar. 7, 2025). The district court rejected Montgomery's contention that she could rely solely on WMATA's standard operating procedures to prove her case. *Id.* at *5. Montgomery timely appealed.

**II.**

We have jurisdiction over this lawsuit under the WMATA Compact. *See Robinson v. WMATA*, 774 F.3d 33, 37–38 (D.C. Cir. 2014) (citing D.C. Code § 9-1107.01(81)). District of Columbia substantive law governs, and therefore, "we must aim to achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case." *Id.* at 38 (cleaned up). The D.C. Court of Appeals has held that the decision to "require expert testimony on a particular state of facts is confided to the sound discretion of the trial court," and "that discretion [is] broad." *Varner v. District of Columbia*, 891 A.2d 260, 266 (D.C. 2006) (cleaned up). Montgomery argues that "[t]he issue of the standard of review presents a purely procedural question that . . . must be governed by federal common law," and that we should review the district court's grant of summary judgment *de novo*. Reply Br. 5; *see also Queen v. Schultz*, 747 F.3d 879, 882 (D.C. Cir. 2014) ("In an appeal from an order granting summary judgment, our review is de novo . . . ."). We need not decide the appropriate standard of review because we would affirm the district court's decision even under a *de novo* standard.

**III.**

On appeal, Montgomery argues that the district court erred by requiring expert testimony to establish the national standard of care and by rejecting Montgomery's proposed use of WMATA's internal operating procedures as a substitute for such testimony. We disagree.

*A. Expert Testimony*

Under D.C. law, a plaintiff asserting a negligence claim must adduce expert testimony to establish the national standard of care if the duty of care is "beyond the ken of the average layperson." *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)). Montgomery's claim relies on "the operator's common-sense duty to warn passengers of an unexpected, extraordinary movement after the train has reached its final stop." Reply Br. 8; *see also Montgomery*, 2025 WL 740806, at *3 (noting Montgomery's claim that "WMATA's negligence consists of not providing adequate warning before . . . adjusting the train on the platform" (cleaned up)). Determining whether a train operator has such a duty to warn is beyond the ken of the average layperson.

The D.C. Court of Appeals has recognized that expert testimony is often necessary in cases relating to the operation of transportation machinery. *See, e.g.*, *Crenshaw v. WMATA*, 731 A.2d 381, 383 (D.C. 1999) ("[W]e fail to see how a jury, in the absence of expert testimony . . . , can conclude that the jerking motion [of the escalator] in this case, as opposed to any other jerking motion, is the result of negligence . . . ."); *Mendoza v. WMATA*, No. 24-7109, 2025 WL 2599818, at *2 (D.C. Cir. Sep. 9, 2025) (requiring expert testimony for a claim "that the train operator negligently bypassed a train safety mechanism in violation of WMATA procedures"); *McKenney v. WMATA*, 318 A.3d 559, 566 (D.C. 2024) (same for maintenance of seats in a Metro railcar). To be sure, we have previously held that expert testimony is not always necessary to prove negligence in the operation of public transit *buses*, on the ground that jurors likely have experience driving similar vehicles, such as cars. *See, e.g.*, *Robinson*, 774 F.3d at 41–42 (requiring no expert testimony for the claim that a bus driver caused a jerk "so violent or extraordinary that it could not have been consistent with safe operation of the bus" (cleaned up)); *Johnson v. WMATA*, No. 90-7029, 1991 WL 214174, at *2 (D.C. Cir. Oct. 21, 1991) (same). *See also Montgomery*, 2025 WL 740806, at *4 ("A juror is likely to have driven a car before" and therefore has some understanding of the standard of care for driving buses.).

But the claim here is different: Montgomery asserts a duty to warn passengers about a berthing adjustment that might cause a Metro train to jerk forward. As the district court observed, "[j]urors may have experience as train passengers, but their understanding of what is expected from a train operator would be speculation." *Montgomery*, 2025 WL 740806, at *4; *see also McKenney*, 318 A.3d at 566 (distinguishing between "the knowledge gained from experience by a lay metro user [and] the knowledge required to establish a standard of care"). Without expert testimony, average jurors would not know, for example, how often berthing adjustments cause a train to jerk, and how violent or extraordinary that jerking motion might typically be. An expert on train safety is plainly necessary to shed light on whether the national standard of care requires a train operator to warn passengers about imminent berthing adjustments.

The cases that Montgomery principally relies upon are inapposite. She cites *Scott v. WMATA* for the proposition that "[d]epending on the standard practices, as understood by the reasonable passenger, the train suddenly moving forward without prior notice could be enough to prove negligence." No. 22-cv-601, 2024 WL 3251229, at *5 (D.D.C. July 1, 2024). But Montgomery takes that statement from *Scott* out of context — in fact, the plaintiff in *Scott* offered an expert witness who opined that "the operator's apparent decision to reposition the fully stopped train at the station without advance notice violated the applicable national standard of care." *Id.*

3

at *2. The cited statement addressed a duty of care not relevant here — namely, the "specific rules governing operators' duties when passengers are alighting" from a train. *Id.* at *5.

Montgomery's reliance on *Connor v. Washington Railway & Electric Co.* is similarly misplaced. 43 App. D.C. 329 (D.C. Cir. 1915). There, we affirmed the district court's dismissal of a negligence suit and, in a single sentence of dictum, suggested that the outcome might have differed had the plaintiff alleged "an unusally [sic] violent jerk or jolt." *Id.* at 334. That statement did not pertain to the necessity of expert testimony. In any event, Montgomery's negligence claim does not turn on a "violent jerk or jolt," but instead on the operator's purported duty to warn of any impending berthing adjustment.

In contrast to the distinguishable authority cited by Montgomery, we find the cases identified by WMATA more persuasive. *See Frick v. Amtrak*, 54 F. Supp. 3d 1, 4 (D.D.C. 2014) (requiring expert testimony for claim that train was moving too quickly); *Hinson v. Md. Transit Admin. (MTA) Rail*, No. 16-cv-0792, 2017 WL 6055447, at *1, *4 (D. Md. Dec. 6, 2017) (same, where train moved five seconds after stopping); *Thurston v. WMATA*, No. 24-cv-00832, 2025 WL 824071, at *2 (E.D. Va. Mar. 14, 2025) (same, where train made a berthing adjustment).

In sum, Montgomery needed expert testimony to establish the standard of care for effecting berthing adjustments, but she failed to provide such testimony.[1] Thus, the district court properly entered summary judgment in favor of WMATA.

## B. Standard Operating Procedures

WMATA's standard operating procedures direct train operators to make the following announcement when effecting a berthing adjustment: "Attention customers, this train will move forward; please hold on." App. 196. Before the district court, Montgomery argued that WMATA's procedures were "[a]dmissible as probative evidence as to whether the train operator exercised due care under the specific circumstances of this case." App. 103. On appeal, she claims that the court "erred to the extent it []regarded WMATA's internal procedures as inadmissible." Opening Br. 27.

Montgomery's characterization of the district court's ruling is inaccurate: The district court did not rule that WMATA's procedures were inadmissible. Instead, the district court correctly held that the WMATA procedures were insufficient, in themselves, to establish the national standard of care. As the district court explained, this court has "consistently found that, under D.C. law, internal [procedures] and manuals cannot *on their own* establish the national standard of care." *Montgomery*, 2025 WL 740806, at *5 (emphasis added) (citing *Robinson*, 774 F.3d at 39; *Briggs v. WMATA*, 481 F.3d 839, 848 (D.C. Cir. 2007)); *see also Casey v. McDonald's Corp.*, 880 F.3d 564, 569 (D.C. Cir. 2018) ("Applying D.C. law, we have stated that internal manuals may not, on

---

[1] Montgomery's invocation of *res ipsa loquitur* "to infer a lack of due care from the mere occurrence of an accident" is equally unavailing. *McKenney*, 318 A.3d at 567. That doctrine requires a showing of common knowledge, in lieu of expert testimony, to prove negligence. *See id.* at 568 ("Where a plaintiff relies upon common knowledge to invoke the doctrine of *res ipsa loquitur*, forgoing the presentation of expert testimony, the fact that such events do not ordinarily occur without negligence must be based upon a widespread consensus of common understanding." (cleaned up)). As discussed *supra*, the alleged duty of care based on a failure to warn is not a matter of common knowledge or understanding.

their own, establish the national standard." (cleaned up)). Based on that well-established precedent, the district court rejected Montgomery's attempt to use WMATA's operating procedures as a substitute for required expert testimony. *See Briggs*, 481 F.3d at 848 ("To hold otherwise would create the perverse incentive for WMATA to write its internal operating procedures in such a manner as to impose minimal duties upon itself in order to limit civil liability . . . ." (cleaned up)).

Because the district court's ruling did not concern the admissibility of WMATA's operating procedures, the cases cited by Montgomery are inapposite. *See, e.g.*, *WMATA v. Young*, 731 A.2d 389, 398 (D.C. 1999) ("WMATA's [procedure] regarding the proper method of making a right turn was admissible."); *Garrison v. D.C. Transit Sys., Inc.*, 196 A.2d 924, 924–25 (D.C. 1964) ("[I]n an action for allegedly negligent injury, the rules adopted by the defendant for the guidance of its employees in the performance of their duties are admissible in evidence . . . ."); *WMATA v. Jeanty*, 718 A.2d 172, 177 n.11 (D.C. 1998) (same, citing *Garrison*, 196 A.2d at 925).[2]

For the foregoing reasons, we affirm the judgment of the district court.

\*   \*   \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk

---

[2] Montgomery also cites other cases that address facts not at issue here. *See WMATA v. O'Neill*, 633 A.2d 834, 841 (D.C. 1993) (duty of care, as informed by WMATA's internal procedures, was not beyond the ken of an average juror); *McKeever v. WMATA*, No. 2018 CA 000463 B, 2019 D.C. Super. LEXIS 350, at \*6–7 (Mar. 9, 2019) (similar, and explaining that internal procedures "can be used to show whether the driver exercised due care in the specific circumstances of this case"); *see also Jeanty*, 718 A.2d at 177–78 (holding that the breach at issue was "sufficiently extreme" to support an inference of negligence).